Marshall WINOKUR and Rae Winokur, Abe Brodsky and Celia Brodsky, and Ethelle Katz and Bertha Katz, Plaintiffs-Appellants,

v.

BELL FEDERAL SAVINGS AND LOAN ASSOCIATION, Home Federal Savings, and Uptown Federal Savings and Loan Association of Chicago, Defendants-Appellees.

No. 75–1469.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1976.

Decided Aug. 2, 1977.

Rehearing Denied Oct. 21, 1977. See 562 F.2d 1034.

Arthur T. Susman, Richard H. Prins and Arnold M. Flamm, Chicago, Ill., for plaintiffs-appellants.

Gary M. Elden, Henry F. Vallely, Chicago, Ill., for defendants-appellees.

Before FAIRCHILD, Chief Judge, PELL, Circuit Judge, and EAST, Senior District Judge.[*]

FAIRCHILD, Chief Judge.

The plaintiffs appeal from the judgment of the district court, dismissing this case on the ground of mootness. In addition, they seek review of two orders of the district court denying their motion for maintenance of this action as a class action, with both plaintiffs and defendants representing classes. The plaintiffs' cause of action was based on the § 10b–5 liability of sellers for untrue statements and omissions of material facts necessary to make statements made not misleading in connection with the sales of securities, § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j and Rule 10(b)(5) of the Rules of the Securities and Exchange Commission, 17 C.F.R.

§ 240.10–5. Jurisdiction was predicated on 15 U.S.C. § 78aa. The securities involved are savings accounts in savings and loan associations. *See Tcherepnin v. Knight,* 389 U.S. 332, 88 S.Ct. 548, 19 L.E.2d 564 (1967). It seems simpler in the context of this case to use the terms accounts, deposits, withdrawals, and interest, rather than purchase and sale of shares, and dividends.

## I

The gravamen of the appellants' amended complaint consists of an allegation that the plaintiffs, Marshall and Rae Winokur, Abe and Celia Brodsky, and Ethelle and Bertha Katz, as depositors with defendants, Bell Federal Savings and Loan Association (Bell), Home Federal Savings (Home), and Uptown Federal Savings and Loan (Uptown), relied to their detriment on certain untrue statements in and omissions from advertisements put out by the defendants in describing the interest defendants would pay to depositors. The plaintiffs sought damages, a permanent injunction against the deceptive advertising, and attorneys' fees.

Defendants' relevant practices in the period covered by the complaint were apparently as follows: As of the close of any calendar quarter, defendants credited interest on funds then on deposit, to the extent of the full months during the quarter these funds had been on deposit, except that funds deposited within the first ten days of a month were treated as if they had been on deposit for that full month. When interest earnings were credited, they were computed as if compounded daily.

Defendants advertised their accounts and included representations (1) that interest was compounded daily and (2) that deposits made by the tenth earn from the first.

The theories on which the representations were claimed to be violations of Rule 10b–5(b), and therefore deceptive devices under § 10(b) of the 1934 Act were in substance:

* The Honorable William G. East, Senior District Judge for the District of Oregon, is sitting by designation.

(1) The representation that interest was compounded daily implied that interest would be credited with respect to any one or more days funds remained on deposit, and was untrue, or at least, in order not to be misleading, made it necessary to state that interest in any quarter would not be credited on funds which were withdrawn before the close of the quarter.

(2) The representation that deposits made by the tenth earn from the first implies that the general rule, from which this is an exception, is that interest begins to accrue on the date of deposit, rather than that interest begins to accrue on the first of the month on or after the date of deposit; and that this representation, in order not to be misleading, made it necessary to state that funds deposited after the tenth of a month would not begin to earn interest until the first of the next month.

Although the amended complaint states that plaintiffs represent all other holders, similarly situated, of savings accounts in named defendants (as well as in the members of like associations similarly situated in the Chicago area), plaintiffs ultimately proposed a class consisting of persons who withdrew funds before the close of a quarter, and thereby did not receive interest, and persons who deposited funds after the tenth of a month and therefore did not receive interest for the balance of the month. Thus the proposed class was defined in terms of those who could demonstrate injury in those particular ways.

Plaintiffs sued individually and as representatives of the class. Defendants were sued individually and as representatives of all other federally chartered savings and loan institutions located in the Chicago metropolitan area and similarly situated.

The district court first addressed the question whether the action was to be maintained as a class action against the named defendants as representatives of a defendant class. The court decided that the class was not so numerous as to make joinder of all members impracticable. Moreover, noting the differences in advertisements and practices among defendants, the court decided that there were not questions of law or fact common to the proposed defendant class. Accordingly, in 1972, the court denied plaintiffs the right to maintain the action against the class.

Several months later, in 1972, the court denied plaintiffs the right to maintain the action on behalf of a class. The court noted the differences in the advertisements, the question whether a depositor had read them, the question whether deposits had been made in person and what representations were made at that time, the availability of further information in the passbook, and the question whether each depositor gained and relied on misconceptions as a result of the representations and omissions in the advertising. The court concluded that the questions of fact varied almost on an individual basis, with material variation in the representations made and in the kinds or degrees of reliance by the depositors. Similarly, the court was of the opinion that the claims of the named plaintiffs were not typical of the claims of the class. The court noted that the two plaintiffs who were depositors in defendant Home made no deposits after the tenth of any month, and admitted they knew the policy actually followed by defendant Home. Thus these plaintiffs did not rely on misconceptions generated by either of the challenged omissions.

The complaint was filed May 18, 1970, and alleged advertising commencing July 1, 1969. Each named plaintiff had been a depositor for a number of years and had made earlier deposits and withdrawals not claimed to have been induced by deception. It was apparently plaintiffs' theory that each time a deposit was made after the tenth of a month after July 1, 1969, he relied upon the advertising for a belief that interest would be credited immediately, and each time a depositor made a withdrawal after July 1, 1969, other than at the close of a quarter, he relied upon the advertising for a belief that interest would be credited to the date of withdrawal.

Plaintiffs would isolate the questions whether the omissions left the advertise-

ments misleading and whether there was scienter and treat them as questions common to the class (predominating over questions affecting only individual members). We assume the district court had in mind the normal course of dealing over a period of time between a depositor and a savings and loan association (different from the transactions of purchases and sales of more conventional securities) and the probability that regular depositors became familiar with interest practices through experience in deciding that it would be difficult and largely unproductive to isolate questions concerning the effect of the challenged advertising, as questions common to the class.

After unsuccessful attempts at obtaining a pronouncement under 28 U.S.C. § 1292(b) on which leave to appeal could be sought, plaintiffs filed a notice of appeal from the determination that the action not be maintained as a class action. This court dismissed the appeal by unreported order, holding the order not appealable, citing *Thill Securities Corp. v. New York Stock Exchange*, 469 F.2d 14 (7th Cir. 1972); *Hackett v. General Host Corp.*, 455 F.2d 618 (3rd Cir. 1972), *certiorari denied* 407 U.S. 925, 92 S.Ct. 2460, 32 L.Ed.2d 812; *Gerstle v. Continental Airlines, Inc.*, 466 F.2d 1374 (10th Cir. 1972); *Jumps v. Leverone*, 150 F.2d 876 (7th Cir. 1945). *Certiorari* was denied. 417 U.S. 930, 94 S.Ct. 2639, 41 L.Ed.2d 233 (1974).

*See also Anschul v. Sitmar Cruises, Inc.*, 544 F.2d 1364 (7th Cir. 1976), *certiorari denied* 429 U.S. 907, 97 S.Ct. 272, 50 L.Ed.2d 189; *Jenkins v. Blue Cross Mut. Hospital Ins., Inc.*, 538 F.2d 164, 166, footnote 2 (7th Cir. 1976).

Thereafter the district court dismissed the action for mootness. As recited in the opinion of the court, "Plaintiffs seek damages, costs, attorneys' fees, and injunctive relief. Defendants assert, and plaintiffs concede, that defendants have tendered to plaintiffs the claimed damages ($12 per plaintiff) and costs, and that attorneys' fees are not authorized by statute." It is conceded that defendants have changed their interest crediting practices so that the rep-

resentations complained of are now accurate beyond question. Thus plaintiffs were found no longer to have any stake in a controversy over the allegedly misleading nature of defendants' advertisements.

## II

### Mootness of the Claims of the Named Plaintiffs

Plaintiffs do not challenge the adequacy of the amount tendered by defendants to cover their individual losses, and court costs. A favorable decision on the merits will bring them no greater amount of money.

Plaintiffs do contend that they have a stake in resolution of the merits because an injunction will protect them from future injury.

Plaintiffs are correct in asserting that the mere cessation of illegal conduct does not necessarily render a case moot. But, on the other hand, the "necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." *United States v. W. T. Grant Co.*, 345 U.S. 629, 632–33, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953). A case becomes moot where "there is no reasonable expectation that the wrong will be repeated." *United States v. Aluminum Co. of America*, 148 F.2d 416, 448 (2d Cir. 1945). Defendants were successful in convincing the district court of their continuing intention to maintain clear consistency between their interest policies as represented in advertising and in actual practice. Ironically, plaintiffs assisted them in so persuading the court.

In the early stages of this litigation (1971) the district court stayed the proceedings pending the outcome of an application to The Federal Home Loan Bank Board. The court reasoned that because of the Board's authority over savings and loan advertising, a finding by the Board would be useful to the court. Plaintiffs moved for reconsideration, and filed an affidavit showing that defendants had changed their

practice of crediting interest so that it conformed to plaintiffs' interpretation of the advertising. The plaintiffs appeared to accept the fact that the past practices were changed so as to conform and were unlikely to reoccur. The affidavit (March 3, 1971) stated:

"Affiant is informed and believes that these named Defendants now truly compound interest daily, with no forfeitures for mid-quarterly withdrawals and no forfeitures with respect to deposits made after the tenth of the month. With these changes, it is believed that all of the activities complained of involving these Defendants have now been corrected. As the Court pointed out . . . the Board cannot award damages; the Board's principal remedy . . . is the issuance of cease and desist orders. . . . Nothing remains for the Board to consider over which it has authority to fashion any remedy. As for current practices, the evils complained of have been cured. As for the past, only this Court can provide an appropriate remedy by way of damages."

Plaintiffs have produced no evidence of any change in this situation since 1971. As stated by the district court, a suggestion that defendants might resume the earlier practices is much too speculative and unlikely to support a live controversy. *See United States v. Oregon Medical Society,* 343 U.S. 326, 333, 72 S.Ct. 690, 96 L.Ed. 978 (1952); *Berg v. LaCrosse Cooler Co.,* 548 F.2d 211, 213 (7th Cir. 1977). Therefore the district court correctly concluded there was no cognizable danger of recurrent violation. There being no occasion for an injunction, even if plaintiffs achieved a favorable decision on the merits, the fact that plaintiffs originally sought an injunction will not provide plaintiffs with a stake in the controversy over the merits.

Finally, plaintiffs contend that if the merits were decided in their favor, they would be entitled to attorneys' fees. The district court noted that plaintiffs concede that attorneys' fees are not authorized by statute. On appeal they contend that if the

merits were decided in their favor, they would fall within one of the exceptions, again recognized by the Supreme Court in *Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 259, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), to the general rule against attorneys' fees.

They rely, in part, on an exception when the losing party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." *F. D. Rich Co. v. U. S. for Use of Indus. Lumber Co.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). The pleadings as well as the record during the course of the proceedings suggest no possible basis for an allowance on that theory. They also rely on an exception when a party has recovered a fund for the benefit of others in addition to himself, *Sprague v. Ticonic National Bank,* 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1969). Although the change in defendants' practices in 1971 resulted in greater allowances of interest than some depositors may have had if the old practices had continued, plaintiffs' lawsuit could equally have resulted in defendants' continuing the practices but inserting additional statements in the advertisements to obviate plaintiffs' objections to them. Again, we are satisfied that there would so clearly be no occasion for an allowance of attorneys' fees, even if plaintiffs achieved a favorable decision on the merits, that plaintiffs seeking attorneys' fees will not provide plaintiffs with a stake in the controversy over the merits.

### III

*The Effect of Mootness on Review of the Denial of Maintenance as a Class Action*

The district court observed that if the action were maintained as a class action, the case would not be moot because of the interests of members of the class, notwithstanding mootness as to the claims of named plaintiffs. Plaintiffs seek our review of the orders denying maintenance as a class action. They contend that these orders were erroneous, and since they could not be reviewed earlier under the views in this circuit, they must be reviewable now,

and reversal of at least the denial of maintenance of the action on behalf of a plaintiff class would restore a live controversy, since members of the plaintiff class would have a damage award at stake.

Our reading of recent decisions of the Supreme Court, however, leads to the conclusion that since plaintiffs' individual claims are now moot, and plaintiffs have not been authorized to represent other class members, the action lacks a live controversy. There being no live controversy, the appellate court cannot exercise jurisdiction, even to reverse the class action determination and thus instill a live controversy into the action.

In *Sosna v. Iowa,* 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975), the Supreme Court decided that a class action did not become moot when, after judgment and pending appeal, the individual interest in the controversy of the named plaintiff expired. There remained a live controversy in which members of the plaintiff class still had an interest. The Court deemed it significant that the named plaintiff litigated the question in a representative capacity, and that the unnamed members of the class had, at the time of certification of the class, acquired a legal status separate from the interest asserted by the named plaintiff.

Similarly, in *Franks v. Bowman Transportation Co.,* 424 U.S. 747, 752, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) the Supreme Court held that the phase of a properly certified class action which was brought up on *certiorari* was not moot because the named plaintiff had ceased to have any interest in that phase of the controversy. A sufficient adversary relationship obtained, however, as to unnamed class members in the phase of the controversy considered by the Court.

Although the situation in *Sosna* had been found to present claims capable of repetition yet evading review, the *Franks* Court made it plain that this situation need not be present to avoid mootness where the named plaintiff in a properly certified class action no longer has a personal stake in the outcome, but class members do. 424 U.S. at 754, 96 S.Ct. 1251.

In *Indianapolis School Comm'rs v. Jacobs,* 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975), the Supreme Court was informed at oral argument that the named plaintiffs no longer had any interest in the matter in controversy. "The case is therefore moot unless it was duly certified as a class action pursuant to Fed.Rules Civ.P. 23, a controversy still exists between [defendants] and the present members of the class, and the issue in controversy is such that it is capable of repetition yet evading review." 420 U.S. at 129, 95 S.Ct. at 850. (Citing *Sosna.*) Because no class action determination had been adequately made, the judgments of the lower courts were vacated, with instructions to dismiss the complaint.

In *Weinstein v. Bradford,* 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975), maintenance as a class action had been denied. By the time the case reached the Supreme Court, plaintiff had ceased to have a personal interest in the matter in controversy, and his claim was not deemed capable of repetition yet evading review. There being no class action, the judgment below was vacated and instructions given to dismiss the complaint. 423 U.S. at 149, 96 S.Ct. 347.

The holdings in *Jacobs* and *Weinstein* require affirmance in the case before us. In both those cases, named plaintiffs had brought suit individually and on behalf of a class. In *Jacobs* the class determination was inadequate and in *Weinstein* it was denied. When the interests of the named plaintiffs disappeared, those plaintiffs were not before the court in a representative capacity, and it was decided that it was immaterial whether unnamed members of the class which named plaintiff had initially sought to represent might have interests at stake in a controversy with defendant. In *Sosna* and *Franks,* on the other hand, the actions had been ordered maintained as class actions, and thus the named plaintiff represented unnamed class members who had personal interests in the controversy.

Several other cases have been decided in this area. In *Kremens v. Bartley,* 431 U.S. 119, 127–136, 97 S.Ct. 1709, 52 L.Ed.2d 184 (1977) a statutory change had

rendered the claims of named plaintiffs and of a great portion of the certified class of unnamed persons moot, but left the controversy alive with respect to many other class members. The Supreme Court vacated the judgment of the district court, but did not order dismissal. Rather, it directed reconsideration of the class definition, exclusion of those whose claims are moot, and substitution of class representatives with live claims.

Two other recent decisions did not involve assertion of mootness: *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977) and *United Air Lines, Inc. v. McDonald,* —— U.S. ——, ——, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977). *McDonald* bears indirectly on our case. There the district court denied maintenance as a class action. When contrary to expectations, named plaintiffs did not seek review of the denial by appeal from the final judgment, a member of the proposed class who had relied on named plaintiffs to appeal promptly sought to intervene and to appeal. It was held that the intervention was timely. Named plaintiffs could have obtained appellate review by appeal from the final judgment, and the intervening member of the proposed class could appeal.

It seems to us that the following four generalizations are consistent with the decisions referred to:

1. When, after an action is ordered maintained as a class action, the controversy between the named party in his own interest and his opponent dies, court adjudication of the merits remains appropriate because the interests of class members are sufficiently represented by the named party so that controversy between the class members and the opponent is still alive and being litigated in the action.

2. When there is no determination that an action be maintained as a class action and the controversy between the named party in his own interest and his opponent dies, court adjudication is not appropriate because there is no controversy between parties who are present or represented before the court in the action.

3. When the right to maintain a class action is denied and the trial court decides the claim on its merits the named party who is still interested in a live controversy, and who sought to represent the class, is deemed to have standing to seek review of the denial.

4. In situation 3 a member of the proposed class may promptly intervene and have standing to seek review of the denial even if the named party elects not to seek review.

Our case fits proposition 2 and not 3. We note a 1974 decision of the Sixth Circuit to the opposite effect, preserving the issue of maintainability of a class action, which had been denied, past the time the named plaintiffs' personal claim became moot and permitting correction on appeal. *Weathers v. Peters Realty Corporation,* 499 F.2d 1197, 1201 (6th Cir. 1974). Such a rationale may well be desirable, but we think it does not survive *Jacobs* and *Weinstein. See Valentino v. Howlett,* 528 F.2d 975, 979 (7th Cir. 1976).

The judgment appealed from, dismissing the action because it is moot, is AFFIRMED.

AFFIRMED.