## UNITED AIRLINES, INC. *v.* McDONALD

No. 76–545. Argued March 29, 1977—Decided June 20, 1977

386

STEWART, J., delivered the opinion of the Court, in which BRENNAN, MARSHALL, BLACKMUN, and REHNQUIST, JJ., joined. POWELL, J., filed a dissenting opinion, in which BURGER, C. J., and WHITE, J., joined, *post*, p. 396. STEVENS, J., took no part in the consideration or decision of the case.

*Stuart Bernstein* argued the cause and filed briefs for petitioner.

*Thomas R. Meites* argued the cause for respondent. With him on the brief were *Lynn Sara Frackman* and *Kenneth N. Flaxman.*

Mr. Justice Stewart delivered the opinion of the Court.

Federal Rule Civ. Proc. 24 requires that an application to intervene in federal litigation must be "timely." In this case a motion to intervene was filed promptly after the final judgment of a District Court, for the purpose of appealing the court's earlier denial of class action certification. The question presented is whether this motion was "timely" under Rule 24.

Until November 7, 1968, United Airlines required its female stewardesses to remain unmarried as a condition of employment; no parallel restriction was imposed on any male employees, including male stewards and cabin flight attendants.[1] This "no-marriage rule" resulted in the termination of the employment of a large number of stewardesses, and in turn spawned a good deal of litigation.

One of the first challenges to this rule was brought by Mary Sprogis, who filed timely charges with the Equal Employment Opportunity Commission in August 1966, contending that her discharge constituted sex discrimination in violation of Title VII of the Civil Rights Act of 1964. 78 Stat. 253, as amended, 42 U. S. C. § 2000e et seq. (1970 ed. and Supp. V). The EEOC found reasonable cause to believe that United's policy was illegal, and issued a "right to sue letter."[2] Sprogis then filed a timely individual action in a Federal District Court, and the court agreed that the no-marriage rule violated

---

[1] See generally Sprogis v. United Air Lines, Inc., 444 F. 2d 1194, 1197–1201 (CA7).

[2] The relevant statutory provision at that time, 42 U. S. C. § 2000e–5 (e), stated that if within 30 days after a charge was filed with the Commission or within 30 days after expiration of a period of reference of the charge to a state or local fair employment agency, the Commission had been unable to secure voluntary compliance, it "shall so notify the person aggrieved and a civil action may, within thirty days thereafter, be brought" by the charging party. The period was extended to 90 days in 1972. § 2000e–5 (f)(1) (1970 ed., Supp. V).

Title VII. 308 F. Supp. 959 (ND Ill.). United took an interlocutory appeal under 28 U. S. C. § 1292 (b) on the issue of liability, and the Court of Appeals for the Seventh Circuit affirmed the finding of sex discrimination. *Sprogis* v. *United Air Lines, Inc.*, 444 F. 2d 1194.

While the appeal in the *Sprogis* case was pending, the present action was filed in the same District Court by Carole Romasanta, a United stewardess who had been discharged in 1967 because of her marriage. She, too, had filed charges with the EEOC, leading to a finding of cause to believe that the no-marriage rule violated Title VII and the issuance of a right-to-sue letter. Romasanta then promptly filed the present suit as a class action on behalf of herself and all other United stewardesses discharged because of the no-marriage rule. Another United stewardess was later permitted to intervene as a named plaintiff.

Several months later, the District Court granted United's motion to strike the complaint's class allegations, ruling that the class could properly consist of only those stewardesses who, upon the loss of their employment because of marriage, had filed charges under either a fair employment statute or United's collective-bargaining agreement. As thus defined, the class numbered not more than 30 and in the court's view did not satisfy the numerosity requirement of Fed. Rule Civ. Proc. 23 (a)(1).[3] As part of its order, however, the District Court allowed 12 married stewardesses who had protested the termination of their employment to intervene as additional parties plaintiff. Pursuant to 28 U. S. C. § 1292 (b), the District Court certified for appeal its order striking the class allegations, but the Court of Appeals declined to accept this interlocutory appeal.[4]

---

[3] Rule 23 (a)(1) lists as one prerequisite to maintenance of a class action that "the class is so numerous that joinder of all members is impracticable."

[4] In the Seventh Circuit, a denial of class certification is an interlocutory order not reviewable as of right until after entry of final judgment. *Anschul* v. *Sitmar Cruises, Inc.*, 544 F. 2d 1364. Even were we to

The litigation proceeded as a joint suit on behalf of the original and the intervening plaintiffs, and the court ultimately determined that those plaintiffs not yet reinstated in their jobs were entitled to that remedy, and that every plaintiff was entitled to backpay. To aid in determining the amount of each backpay award, the court appointed as a Special Master the same person who had performed a similar task in the *Sprogis* litigation.[5] Following guidelines adopted in *Sprogis,* the parties eventually agreed upon the amounts to be awarded each plaintiff, and upon consummation of this agreement the trial court entered a judgment of dismissal on October 3, 1975.

The specific controversy before us arose only after the entry of that judgment. The respondent, a former United stewardess, had been discharged in 1968 on account of the no-marriage rule. She was thus a putative member of the class as defined in the original *Romasanta* complaint. Knowing that other stewardesses had challenged United's no-marriage rule, she had not filed charges with the EEOC or a grievance under the collective-bargaining agreement.[6]

---

assume, *arguendo,* that the Seventh Circuit is wrong in not recognizing the so-called death-knell doctrine, which permits immediate appeal of adverse class determinations where the claims are so small that individual suits are uneconomical, appeal before final judgment would not have been available in this lawsuit, for the individual claims were sufficiently large to permit the action to proceed, as it did, on an individual basis. See generally 7A C. Wright & A. Miller, Federal Practice and Procedure § 1802, pp. 271–277 (1972); *id.,* at 129–130 (Supp. 1977).

[5] In *Sprogis,* following affirmance by the Court of Appeals of the District Court's finding of liability, the case was remanded for further proceedings. The Special Master appointed by the District Court recommended that the plaintiff be awarded over $10,000 in damages, the District Court approved that award, and the Court of Appeals affirmed. See *Sprogis* v. *United Air Lines, Inc.,* 517 F. 2d 387, 389–390, 392 (CA7).

[6] As the opinion in *Albemarle Paper Co.* v. *Moody,* 422 U. S. 405, makes clear, full relief under Title VII "may be awarded on a class basis . . . without exhaustion of administrative procedures by the unnamed class members." *Id.,* at 414 n. 8. See also *Franks* v. *Bowman Transp. Co.,* 424 U. S. 747, 771.

After learning that a final judgment had been entered in the *Romasanta* suit, and that despite their earlier attempt to do so the plaintiffs did not now intend to file an appeal challenging the District Court's denial of class certification, she filed a motion to intervene for the purpose of appealing the District Court's adverse class determination order. Her motion was filed 18 days after the District Court's final judgment, and thus was well within the 30-day period for an appeal to be taken.[7] The District Judge denied the motion, stating:

> "Well, in my judgment, gentlemen, this is five years now this has been in litigation, and this lady has not seen fit to come in here and seek any relief from this Court in any way during that period of time, and litigation must end. I must deny this motion. Of course, that is an appealable order itself, and if I am in error then the Court of Appeals can reverse me and we will grant a hearing, but in my judgment this is too late to come in."

The respondent promptly appealed the denial of intervention as well as the denial of class certification to the Court of Appeals for the Seventh Circuit. The appellate court reversed, holding that the District Court had been wrong in believing that the motion to intervene was untimely under Rule 24 (b),[8] and had also erred in refusing to certify the class as described in the *Romasanta* complaint—a class consisting of all United stewardesses discharged because of the no-marriage rule, whether or not they had formally protested the termination of their employment. *Romasanta* v. *United Airlines, Inc.*, 537 F. 2d 915.

---

[7] See Fed. Rule App. Proc. 4 (a).

[8] In relevant part, Rule 24 (b) provides:

"Upon timely application anyone may be permitted to intervene in an action . . . when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."

United's petition for certiorari did not seek review of the determination that its no-marriage rule violated Title VII, nor did it contest the merits of the Court of Appeals' decision on the class certification issue. Instead, it challenged only the Court of Appeals' ruling that the respondent's post-judgment application for intervention was timely. We granted the petition, 429 U. S. 998, to consider that single issue.

In urging reversal, United relies primarily upon *American Pipe & Construction Co.* v. *Utah,* 414 U. S. 538. That case involved a private antitrust class action that had been filed 11 days short of the expiration of the statutory limitations period.[9] The trial court later denied class certification because the purported class did not satisfy the numerosity requirement of Rule 23 (a)(1).[10] Neither the named plaintiffs nor any unnamed member of the class appealed that order, either then or at any later time. Eight days after entry of the order, a number of the putative class members moved to intervene as plaintiffs, but the trial court denied the motions as untimely. This Court ultimately reversed that decision, ruling that in those circumstances "the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." 414 U. S., at 553. Since 11 days remained when the statute of limitations again began to run after denial of class certification, and the motions to intervene as plaintiffs were filed only eight days after that denial, they were timely. *Id.,* at 560–561.

It is United's position that, under *American Pipe,* the relevant statute of limitations began to run after the denial of class certification in the *Romasanta* action. United thus reasons that the respondent's motion to intervene was time barred, and in support of this position makes alternative

[9] See 414 U. S., at 541–542.
[10] See n. 3, *supra.*

arguments based on two different statutory periods of limitations prescribed by Title VII.[11]

This argument might be persuasive if the respondent had sought to intervene in order to join the named plaintiffs in litigating her individual claim based on the illegality of United's no-marriage rule, for she then would have occupied the same position as the intervenors in *American Pipe*. But the later motion to intervene in this case was for a wholly different purpose. That purpose was to obtain appellate review of the District Court's order denying class action status in the *Romasanta* lawsuit,[12] and the motion complied with, as it was required to, the time limitation for lodging an appeal prescribed by Fed. Rule App. Proc. 4 (a). Success in that review would result in the certification of a class, the named members of which had complied with the statute of limitations; the respondent is a member of that class against whom the statute had not run at the time the class action was commenced.

The lawsuit had been commenced by the timely filing of a complaint for classwide relief, providing United with "the essential information necessary to determine both the subject

---

[11] A person complaining of employment discrimination is ordinarily required to file a charge with the EEOC within 180 days of the occurrence of the discriminatory act. 42 U. S. C. § 2000e–5 (e) (1970 ed., Supp. V). Once the administrative process has been exhausted and the EEOC sends the complainant a right-to-sue letter, a civil action in federal district court must be filed within 90 days of receipt of the right-to-sue letter. § 2000e–5 (f) (1) (1970 ed., Supp. V), discussed in n. 2, *supra*. Since nearly three years passed after the adverse class determination before the respondent took any action, under United's theory her action is time barred whichever of the two limitations periods is thought to be the relevant one.

[12] Cf. Shapiro, Some Thoughts on Intervention Before Courts, Agencies, and Arbitrators, 81 Harv. L. Rev. 721, 727 (1968) ("It is both feasible and desirable to break down the concept of intervention into a number of litigation rights and to conclude that a given person has one or some of these rights but not all").

matter and size of the prospective litigation . . . ." *American Pipe, supra,* at 555.[13]   To be sure, the case was "stripped of its character as a class action" upon denial of certification by the District Court.   Advisory Committee's Note on 1966 Amendment to Rule 23, 28 U. S. C. App., p. 7767. But "it does not . . . follow that the case must be treated as if there never was an action brought on behalf of absent class members." *Philadelphia Electric Co.* v. *Anaconda American Brass Co.,* 43 F. R. D. 452, 461 (ED Pa.). The District Court's refusal to certify was subject to appellate review after final judgment at the behest of the named plaintiffs, as United concedes.[14]   And since the named

---

[13] The unlawful discrimination alleged in the complaint—enforcement of the no-marriage rule—was plainly part of a uniform companywide policy that had been applied to all stewardesses.   See also S. Rep. No. 92-415, p. 27 (1971) ("[T]itle VII actions are by their very nature class cómplaints"), cited in *Albemarle Paper Co.* v. *Moody,* 422 U. S., at 414 n. 8.

[14] See, *e. g., Share* v. *Air Properties G., Inc.,* 538 F. 2d 279, 283 (CA9); *Zenith Laboratories, Inc.* v. *Carter-Wallace, Inc.,* 530 F. 2d 508, 512 (CA3); *Penn* v. *San Juan Hospital, Inc.,* 528 F. 2d 1181, 1188–1190 (CA10); *Bailey* v. *Ryan Stevedoring Co.,* 528 F. 2d 551, 553–554 (CA5); *Wright* v. *Stone Container Corp.,* 524 F. 2d 1058, 1061–1063 (CA8); *Paton* v. *La Prade,* 524 F. 2d 862, 874–875 (CA3); *Haynes* v. *Logan Furniture Mart, Inc.,* 503 F. 2d 1161, 1162–1165 (CA7); *Galvan* v. *Levine,* 490 F. 2d 1255, 1260–1262 (CA2); *Roberts* v. *Union Co.,* 487 F. 2d 387 (CA6); *Esplin* v. *Hirschi,* 402 F. 2d 94 (CA10).

United argues that it was unfairly surprised when after having settled the case with all of the original and intervening plaintiffs it nonetheless faced an appeal, and suggests that the negotiation of settlements will be impeded if post-judgment intervention like the respondent's is permitted. The characterization of the resolution of the *Romasanta* action as a "settlement" could be slightly misleading.   It is of course true that opposing counsel agreed upon a disposition that resulted in dismissal of the complaints.   But that agreement came only after the District Judge had granted motions by some plaintiffs for partial summary judgment, and, there was never any question about United's liability in view of the *Sprogis* decision.   All that remained to be determined was the computation of backpay, and the guiding principles for that computation had been

plaintiffs had attempted to take an interlocutory appeal from the order of denial at the time the order was entered, there was no reason for the respondent to suppose that they would not later take an appeal until she was advised to the contrary after the trial court had entered its final judgment.

The critical fact here is that once the entry of final judgment made the adverse class determination appealable, the respondent quickly sought to enter the litigation. In short, as soon as it became clear to the respondent that the interests of the unnamed class members would no longer be protected by the named class representatives, she promptly moved to intervene to protect those interests.[15]

United can hardly contend that its ability to litigate the issue was unfairly prejudiced simply because an appeal on behalf of putative class members was brought by one of their own, rather than by one of the original named plaintiffs. And it would be circular to argue that an unnamed member of the

---

established in *Sprogis*. The "settlement" ultimately reached merely applied those principles to the claims in this case.

The respondent's motion to intervene was filed less than three weeks after the "settlement" was incorporated in the District Court's final judgment, and necessarily "concern[ed] the same evidence, memories, and witnesses as the subject matter of the original class suit." *American Pipe & Construction Co.* v. *Utah*, 414 U. S. 538, 562 (BLACKMUN, J., concurring). There is no reason to believe that in that short period of time United discarded evidence or was otherwise prejudiced.

[15] A rule requiring putative class members who seek only to appeal from an order denying class certification to move to intervene shortly after entry of that order would serve no purpose. Intervention at that time would only have made the respondent a superfluous spectator in the litigation for nearly three years, for the denial of class certification was not appealable until after final judgment, see n. 4, *supra*. Moreover, such a rule would induce putative class members to file protective motions to intervene to guard against the possibility that the named representatives might not appeal from the adverse class determination. Cf. *American Pipe, supra,* at 553. The result would be the very "multiplicity of activity which Rule 23 was designed to avoid." 414 U. S., at 551. Cf. *Franks* v. *Bowman Transp. Co.,* 424 U. S., at 757 n. 9.

putative class was not a proper party to appeal, on the ground that her interests had been adversely determined in the trial court. United was put on notice by the filing of the *Romasanta* complaint of the possibility of classwide liability, and there is no reason why Mrs. McDonald's pursuit of that claim should not be considered timely under the circumstances here presented.

Our conclusion is consistent with several decisions of the federal courts permitting post-judgment intervention for the purpose of appeal.[16] The critical inquiry in every such case

---

[16] A case closely in point is *American Brake Shoe & Foundry Co.* v. *Interborough Rapid Transit Co.*, 3 F. R. D. 162 (SDNY). That case involved a plan for reorganization of the Interborough Rapid Transit Co. and for its consolidation with the Manhattan Elevated Railway. Mannheim, an owner of a series of bonds in the Manhattan Railway, had participated in the District Court not merely representing his own interests but also acting as "attorney in fact" for other owners of the bonds. After the District Court had approved the plan as fair and equitable, and had subsequently ordered its implementation, Mannheim filed a notice of appeal. He then decided to abandon the appeal and to seek to surrender his bonds pursuant to the terms of the plan. One of the other holders of the same series of bonds, for whom Mannheim had been acting as attorney-in-fact, then moved to intervene for the purpose of prosecuting an appeal on behalf of herself and all other nonsurrendering bondholders. Noting that it is "essential in the administration of our system of justice, that litigants should have their day in court" and that the motion was filed within the time in which an appeal might have been brought, the District Court ruled that the motion to intervene was timely. *Id.*, at 164.

The decision in *Pellegrino* v. *Nesbit*, 203 F. 2d 463 (CA9), is also similar to the case at bar. There a corporation had filed an action against corporate officers under § 16 (b) of the Securities Exchange Act of 1934, 15 U. S. C. § 78p (b), for recovery of short-swing profits. The District Court entered judgment for the defendants, and when the corporation failed to appeal, a shareholder sought to intervene for the purpose of appealing from the District Court decision. The Court of Appeals, reversing the District Court, ruled that the motion was timely and that intervention should have been permitted. 203 F. 2d, at 465–466.

Post-judgment intervention for the purpose of appeal has been found to be timely even in litigation that is not representative in nature, and in

is whether in view of all the circumstances the intervenor acted promptly after the entry of final judgment. Cf. *NAACP v. New York*, 413 U. S. 345, 366. Here, the respondent filed her motion within the time period in which the named plaintiffs could have taken an appeal. We therefore conclude that the Court of Appeals was correct in ruling that the respondent's motion to intervene was timely filed and should have been granted.

The judgment is

*Affirmed.*

Mr. Justice Stevens took no part in the consideration or decision of this case.

Mr. Justice Powell, with whom The Chief Justice and Mr. Justice White join, dissenting.

The Court's opinion shifts confusingly between the two distinct questions of timeliness raised by respondent McDonald's attempt to intervene in this action against petitioner United Airlines, Inc.[1] The first question involves the effect of the

---

which the intervenor might therefore be thought to have a less direct interest in participation in the appellate phase. See, *e. g., Hodgson v. United Mine Workers*, 153 U. S. App. D. C. 407, 417–419, 473 F. 2d 118, 129; *Smuck v. Hobson*, 132 U. S. App. D. C. 372, 378–379, 408 F. 2d 175, 181–182; *Zuber v. Allen*, 128 U. S. App. D. C. 297, 387 F. 2d 862, discussed in *Hobson v. Hansen*, 44 F. R. D. 18, 29–30, n. 10 (DC); *Wolpe v. Poretsky*, 79 U. S. App. D. C. 141, 144, 144 F. 2d 505, 508; *United States Cas. Co. v. Taylor*, 64 F. 2d 521, 526–527 (CA4).

Insofar as the motions to intervene in these cases were made within the applicable time for filing an appeal, they are consistent with our opinion and judgment in the present case.

[1] Respondent had been terminated by petitioner in September 1968, under its then-existing "no marriage" rule for stewardesses. The class action complaint in *Romasanta v. United Airlines* was filed in May 1970. The District Court denied class status in December 1972, and a number of the members of the putative class intervened in the individual action. Discovery and settlement discussion followed, and the initial and intervening plaintiffs were able to settle their claims. On October 3,

statute of limitations on respondent's rights against petitioner. This question is directly relevant to the motion to intervene because a prerequisite of intervention for any purpose is that the intervenor have an interest in the litigation. Petitioner has consistently contended that respondent's interest in this litigation was barred by the statute of limitations at the time she sought to intervene. Assuming that respondent's interest was not time barred, the second question involves the broader and more discretionary concept of the timeliness of her motion to intervene under Fed. Rule Civ. Proc. 24. This was apparently the basis on which the District Court denied respondent's motion.

In *American Pipe & Construction Co.* v. *Utah,* 414 U. S. 538 (1974), the Court held that the filing of a class action complaint "suspended the running of the limitation period *only during the pendency of the motion to strip the suit of its class action character." Id.,* at 561 (emphasis added). Time again commenced to run under the limitations period when the District Court denied class status, and members of the putative class were allowed to intervene in the nonclass action only if their motions were filed before the expiration of the remaining time.

A straightforward reading of *American Pipe* leads to the conclusion that the filing of the class action complaint in *Romasanta* v. *United Airlines* tolled the statute of limitations for respondent, but "only during the pendency of the motion to strip the suit of its class action character." Under the *American Pipe* rule, the statute of limitations had run

---

1975—almost three years after class status was denied—a final order dismissing the suit with prejudice was entered, all "matters in controversy . . . having been settled and resolved." App. 90–92. On October 21, 1975, respondent moved to intervene for purposes of appealing the denial of class status. Before this point, she had filed no grievance under the collective-bargaining agreement, no charge with any state or federal agency, and had taken no part in the preceding litigation—although she was fully aware of the entire situation.

against respondent by the time she attempted to intervene. Thus, the Court's holding must reflect a decision to supplement the *American Pipe* rule with a novel tolling rule applicable only to intervention for the purpose of appealing the denial of class status. Under this new rule, the statute apparently is tolled from the filing of the class action complaint until such time after final judgment as the intervenor can determine that "the interests of the unnamed class members [will] no longer be protected by the named class representatives." *Ante,* at 394. I find no justification for this extension, either in precedent or policy.

Today's opinion also represents a marked departure from established law on the question of timeliness under Rule 24. The Court apparently has ruled that a motion to intervene for the purpose of appealing the denial of class status is timely under Rule 24 as a matter of law, so long as it is filed "within the time period in which the named plaintiffs could have taken an appeal." *Ante,* at 396. The discretionary judgment of the District Court emphasized in *NAACP* v. *New York,* 413 U. S. 345, 365–366 (1973), is thus eliminated.

The Court purports to distinguish *American Pipe* on the ground that respondent's purpose in intervening was not "to join the named plaintiffs in litigating her individual claim." but rather "to obtain appellate review of the District Court's order denying class action status." *Ante,* at 392. The relevance of this undisputed factual distinction is not explained, but two major themes can be identified in the Court's opinion: First, that respondent was justified in relying on the named plaintiffs to protect her interest by taking an appeal, and second, that petitioner was not prejudiced by respondent's intervention at the end of the litigation. These themes have a common analytical weakness, namely, the Court's unwillingness to accept the consequences of the District Court's denial of class status. In the words of the Advisory Committee that drafted the 1966 amendment to Rule 23, the action was

thereby "stripped of its character as a class action." 28 U. S. C. App., p. 7767. After the denial of class status, the action proceeded as an ordinary nonclass action by the individual plaintiffs against petitioner.[2]

Under the Court's analysis, the "critical fact" in this case is that "once the entry of final judgment made the adverse class determination appealable," respondent moved to intervene "as soon as it became clear [to her] that the interests of the unnamed class members would no longer be protected by the named class representatives." *Ante,* at 394. Pervading the Court's opinion is the assumption that the class action somehow continued after the District Court denied class status. But that assumption is supported neither by the text nor by the history of Rule 23. To the contrary, those sources as well as this Court's decision in *American Pipe* support the view that the denial of class status converts the litigation to an ordinary nonclass action. Reliance by respondent on the former class representatives was therefore misplaced. After the denial of class status, they were simply individual plaintiffs with no obligation to the members of the class. *Pearson* v. *Ecological Science Corp.,* 522 F. 2d 171 (CA5 1975). In the words of Judge Pell, dissenting below, the denial of class status is "a critical point which puts putative class members on notice that they must act to protect their rights." *Romasanta* v. *United Airlines, Inc.,* 537 F. 2d 915, 922 (CA7 1976).

The Court's casual treatment of the prejudice to petitioner also reflects its assumption that the class action persisted despite the denial of class status. Petitioner was fully justi-

---

[2] The Court quotes from *Philadelphia Electric Co.* v. *Anaconda American Brass Co.,* 43 F. R. D. 452, 461 (ED Pa. 1968), for the proposition that a case need not " 'be treated as if there never was an action brought on behalf of absent class members.' " *Ante,* at 393. *Philadelphia Electric* involved the same issue ultimately resolved by this Court in *American Pipe* and is otherwise irrelevant to the question now before us.

fied in attempting to resolve the dispute as a nonclass action. Having achieved a settlement of the case, petitioner was prejudiced by respondent's attempt to reopen the case. It is true that the possibility of an appeal of the denial of class status existed, but the Court's treatment of that possibility misconceives both petitioner's position and the law. It is suggested that petitioner concedes that "[t]he District Court's refusal to certify was subject to appellate review after final judgment at the behest of the named plaintiffs . . . ." *Ante*, at 393. But petitioner concedes only that the named plaintiffs could have appealed the denial of class status *if they had chosen to litigate the case to a final judgment rather than to settle it.* It argues with great force that, as a result of the settlement of their individual claims, the named plaintiffs "could no longer appeal the denial of class" status that had occurred years earlier. Brief for Petitioner 15. Although this question has not been decided by this Court,[3] the answer on principle is clear. The settlement of an individual claim typically moots any issues associated with it. 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3533, p. 271 (1975). This case is sharply distinguishable from cases such as *Sosna* v. *Iowa,* 419 U. S. 393 (1975), and *Franks* v. *Bowman Transp. Co.,* 424 U. S. 747 (1976), where we allowed named plaintiffs whose individual claims were moot to continue to represent their classes. In those cases, the District Courts previously had certified the classes, thus giving them "a legal status separate from the interest[s] asserted by [the named plaintiffs]." *Sosna* v. *Iowa, supra,* at 399. This case presents precisely the opposite situation: The prior denial of class status had extinguished any representative capacity.

Considerations of policy militate strongly against the result reached by the Court. Our cases reflect a long tradition of respect for statutes of limitations and the values they serve.

---

[3] None of the cases cited by the Court, *ante,* at 393 n. 14, involves this situation.

These legislative enactments "are vital to the welfare of society and are favored in the law," because they "promote repose by giving security and stability to human affairs" and "stimulate to activity and punish negligence." *Wood* v. *Carpenter*, 101 U. S. 135, 139 (1879). When a "plaintiff has slept on his rights," an otherwise meritorious claim is barred, both to ensure "fairness to defendants" and to relieve "the burden [on the courts] of trying stale claims." *Burnett* v. *New York Central R. Co.*, 380 U. S. 424, 428 (1965). Statutes of limitations thus "make an end to the possibility of litigation after the lapse of a reasonable time." *Guaranty Trust Co.* v. *United States*, 304 U. S. 126, 136 (1938). The Court nevertheless has reached a decision that rewards those who delay asserting their rights. I view the result as an injustice to petitioner and as a precedent that ill serves the need for repose.

The Court also ignores the important "principle that '[s]ettlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts . . . and preventing lawsuits.'" *Pearson* v. *Ecological Science Corp., supra*, at 176, quoting *D. H. Overmyer Co.* v. *Loftin*, 440 F. 2d 1213, 1215 (CA5 1971). Settlements particularly serve the public interest "within the confines of Title VII where 'there is great emphasis . . . on private settlement and the elimination of unfair practices without litigation.'" *Air Lines Stewards* v. *American Airlines, Inc.*, 455 F. 2d 101, 109 (CA7 1972), quoting *Oatis* v. *Crown Zellerbach Corp.*, 398 F. 2d 496, 498 (CA5 1968). Today's decision will deter settlements because of the additional uncertainty as to whether the agreements will be nullified by the action of persons who enter the litigation only after final judgment.[4]

---

[4] As Judge Pell noted, respondent's delay in seeking intervention was especially costly in this case:

"It is important to note that had she sought intervention immediately

In support of its decision, the Court suggests that adherence to the *American Pipe* rule might result in precautionary interventions to guard against the possibility that the named plaintiffs would fail to appeal the denial of class status, thus producing the very " 'multiplicity of activity which Rule 23 was designed to avoid.' " *Ante,* at 394 n. 15, quoting *American Pipe,* 414 U. S., at 553. But, as I have shown, Rule 23 was not designed to eliminate any multiplicity of activity *after* class status is denied.[5]

In my view, the proper analysis of these questions is as follows: Under *American Pipe,* the filing of a class action complaint tolls the statute of limitations until the District Court makes a decision regarding class status. If class status is denied in whole or in part, the statute of limitations begins to run again as to class members excluded from the class. In order to protect their rights, such individuals must seek to intervene in the individual action (or possibly file an action of their own) before the time remaining in the limitations period expires. Assuming that intervention is sought within the limitations period, the district court's decision whether

---

after the denial of class status, and her intervention had been denied, the intervention issue would have been before this court three years ago. Furthermore, assuming that her intervention had been denied because of petitioner's failure to protest the no-marriage rule—the requirement which was the basis of the court's holding that this action lacked the requisite numerosity to proceed as a class action—then *that* issue would have been before this court and decided three years ago. Instead, petitioner chose to sit back and allow others to assume the costs and risks in prosecuting their individual actions, and now she attempts to revive her dead claim through another suit which after years of legal argument and negotiation was finally settled to the satisfaction of all parties." 537 F. 2d, at 922 (dissenting opinion).

[5] Moreover, precautionary intervention is likely even under the Court's decision. As in *American Pipe* itself, individuals concerned about their claims will frequently move to intervene as plaintiffs in the nonclass action rather than placing all of their hopes on the possibility that the denial of class status will be reversed on appeal.

to allow intervention is made according to the discretionary timeliness concept of Rule 24, as interpreted in *NAACP* v. *New York*, 413 U. S. 345 (1973). This decision is made in light of all of the circumstances in the case and is entitled to substantial deference on appeal. But delay in seeking intervention should militate against allowing intervention. Under this approach, a premium is placed on attempting to intervene as soon as possible after the denial of class status. When combined with the requirement of Rule 23 (c)(1) that the decision as to class status be made "[a]s soon as practicable after the commencement of an action brought as a class action," this approach would ensure that the contours of the nonclass action would be defined early in the litigation. This would enable the major decisions concerning the case to be made expeditiously, thus speeding its ultimate resolution. The Court's decision today encourages the opposite result.