Michael McCARTHY et al.

v.

Richard G. KLEINDIENST, Acting Attorney General of the United States, et al.*

Appeal of Mark Samuel ABELMAN et al.

No. 76–1054.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 14, 1977.

Decided Aug. 10, 1977.

Herbert Dym, Washington, D. C., with whom Dana T. Ackerly was on the brief, for appellants.

Barbara L. Herwig, Atty., Dept. of Justice, Washington, D. C., with whom Rex E. Lee, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., and Robert E. Kopp, Atty., Dept. of Justice, Washington, D. C., were on the brief for federal appellees, argued for all appellees.

John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, and Leo N. Gorman, Asst. Corp. Counsels, Washington, D. C., at the time the brief was filed, were on the brief for District of Columbia appellees. David P. Sutton, Asst. Corporation Counsel, Washington, D. C., also entered an appearance for the District of Columbia appellees.

Before WRIGHT, TAMM and LEVENTHAL, Circuit Judges.

Opinion for the Court filed by LEVENTHAL, Circuit Judge.

LEVENTHAL, Circuit Judge:

This case involves claims for damages for alleged police misconduct during the "May Day" demonstrations of 1971. The events out of which the lawsuit arises are described in considerable detail in *Sullivan v. Murphy,* 156 U.S.App.D.C. 28, 478 F.2d 938, *cert. denied,* 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 165 (1973), and more briefly in *Apton v. Wilson,* 165 U.S.App.D.C. 22, 506 F.2d 83 (1974). We refer the reader to those opinions for the factual background of this case.

■ We are not here asked to deal with the merits of this lawsuit, but with two procedural questions. The first is whether the district court properly denied as untime-

ly a motion to intervene filed by 266 plaintiffs immediately after class certification was refused on grounds of untimeliness and nonpredominance of common questions. The second is whether that refusal to certify was correct. Since we conclude that under the Supreme Court's decision in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974) the plaintiffs did have a right to intervene with respect to some, and perhaps all, of their claims, we are not required on this appeal to decide the question of class certification.

## I. DISTRICT COURT PROCEEDINGS AND ORDERS

This lawsuit was filed on May 1, 1972 on behalf of 39 named individuals arrested in Washington on May 3 of the previous year. The named plaintiffs sought injunctive relief and monetary compensation for themselves and for a class consisting of all persons who had been unlawfully arrested or detained on May 3, 1971. The complaint alleged that law enforcement authorities had conspired to use unlawful tactics against the demonstrators assembled in Washington, including the use of indiscriminate arrests, falsified arrest forms, deliberate detention for excessive periods of time and under inhumane conditions, cumbersome and coercive processing and prosecutions undertaken for purposes of harassment. Named as defendants were then Acting Attorney General Richard G. Kleindienst, former Attorney General John N. Mitchell, former Assistant Attorney General Will Wilson, Commissioner of the District of Columbia Walter Washington, Chief of the Metropolitan Police Department Jerry V. Wilson and various other officials of the Justice Department and District of Columbia government.

The federal defendants, asserting an absolute immunity from suit, moved for summary judgment, and on July 31, 1973 their motion was granted. On October 12, 1973, the district court stayed further proceedings pending a ruling by the Court of Appeals on the grant of summary judgment.

That appeal was dismissed on January 14, 1974 (No. 73–2023), but the following August this court reversed a similar ruling by Judge Pratt in a related "May Day" case. *Apton v. Wilson, supra.* Relying on this decision, plaintiffs in this lawsuit moved on November 4, 1974, for an order reinstating the federal defendants and that motion was granted on July 2, 1975.

On July 25, 1975 plaintiffs moved to have this action certified as a class action on behalf of all those persons whose arrests were declared presumptively invalid in *Sullivan v. Murphy, supra.* The district court denied certification by an order dated September 11, 1975. In support of its refusal to certify the district court gave four reasons:

. . . that (1) plaintiffs' Motion for Certification of a Class was not timely filed, (2) such certification would at this late date further delay the action and necessitate massive discovery, (3) this action on the merits does not lend itself to such class action certification and (4) the particularized facts involved in each plaintiffs' arrest and detention preclude class action treatment.

On the day following denial of class certification, 266 named members of the alleged class sought to intervene as plaintiffs. The intervention complaint was identical in all respects to the main complaint in the case except that it did not purport to be on behalf of a class. The district court denied this motion to intervene on November 10, 1975, on the grounds that the motion was "untimely" and that the requested intervention would cause undue delay and prejudice. The 266 former class members appeal both from the denial of intervention and from the refusal to certify the class.

## II. TIMELINESS OF INTERVENTION

Appellants filed their motion to intervene more than four years after the alleged tortious acts and more than three years after this lawsuit was commenced. The parties appear to agree that the statute of limitations applicable to the tortious acts alleged in appellant's complaint is one year. *See* 12

D.C.Code § 301(4). Thus the timeliness of appellants' motion to intervene—indeed the viability of their claims—depends upon whether the statute of limitations was tolled by the filing of the original complaint on behalf of the entire class.

The critical precedent on this issue is *American Pipe & Construction Co. v. Utah,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). That case involved a private antitrust class action that had been filed 11 days short of the expiration of the statutory limitations period. The trial court later denied class certification because the purported class did not satisfy the numerosity requirement of Rule 23(a)(1). Eight days after entry of that order, a number of the putative class members moved to intervene as plaintiffs. The trial court denied the motions as untimely. The Supreme Court held that "in this posture, at least where class status has been denied solely because of failure to demonstrate that 'the class is so numerous that joinder of all members is impracticable,' the commencement of the original class suit tolls the running of the statute for all purported members of the class who make timely motions to intervene after the court has found the suit inappropriate for class action status." 414 U.S. at 552–53, 94 S.Ct. at 756–66.

Defendants argue that the *American Pipe* decision was intended to be limited in its effect and that this case does not fall within its scope. The federal defendants contend that *American Pipe* is inapplicable because here class certification was denied on grounds of untimeliness. The District of Columbia defendants argue that this case is distinguishable from *American Pipe* in that here one of the grounds for denial of the class was that "the particular facts involved in each plaintiff's arrest and detention preclude class treatment." The District of Columbia defendants rely on language in *American Pipe* emphasizing that the named plaintiffs' claims had been found typical of the claims of the class. 414 U.S. at 550, 553, 94 S.Ct. 756.

Appellants respond that there is also language in *American Pipe* which has very broad implications. The Court observed that "We are convinced that the rule most consistent with federal class action procedure must be that the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 553–54, 94 S.Ct. at 766; *see also id.* at 550, 94 S.Ct. 756. More importantly, appellants argue that the reasoning of *American Pipe* has very broad application, that unless the statute of limitations is tolled by the filing of the class complaint, class members will be forced to make duplicative filings to protect their rights.

The reasoning of the *American Pipe* opinion requires that its doctrine be applied in situations beyond the particular facts presented in that case. The Supreme Court was concerned that a rule allowing participation only by those potential members of the class who had earlier filed motions to intervene "would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." 414 U.S. at 553, 94 S.Ct. at 766. The Court pointed out that in cases such as the one before it, where the determination to disallow the class "was made upon . . . subtle factors," a rule requiring successful anticipation of the determination of the viability of the class would "breed needless duplication of motions." *Id.* at 554, 94 S.Ct. at 766. Assuming that the defendant receives fair notice of the nature of the intervenors' claims, this rationale would not seem to depend on the specific ground on which class certification was denied in *American Pipe. See* Developments in the Law—Class Actions, 89 Harv.L.Rev. 1318, 1449 (1976).

Thus, we do not think that this case can be distinguished from *American Pipe* on the grounds that class certification was here refused in part because of untimeliness. At least in the absence of an applicable local rule specifying who is to initiate consideration of the certification question and when

that motion is to be made,[1] the question of whether such a motion conforms to the "as soon as practicable" standard of Rule 23 may depend upon "subtle factors" not easily evaluated by prospective intervenors.[2] In order to avoid unnecessary and duplicative protective filings, the doctrine of *American Pipe* should be extended to cover this situation. *See Peritz v. Liberty Loan Corp.*, 523 F.2d 349, 355 n.5 (7th Cir. 1975).

The policy considerations outlined in *American Pipe* call for a broad reading of that decision. Defendants argue that such a reading might lead to other abuses, but these speculations cannot override the considerations stressed by the Supreme Court.[3] There is no evidence in this case that appellants or their counsel have engaged in manipulative conduct.

We have carefully considered defendants' contention that *American Pipe* cannot apply where the district court has not found the named plaintiffs to be typical of the class. The Supreme Court's opinion stressed the district court's finding that plaintiff was representative of his class. *E.g.*, 414 U.S. at 550–51, 553, 554–55, 94 S.Ct. 756.

The significance of this factor appears in the Court's discussion of the functions of statutes of limitations. These statutes, the Court noted, are " 'designed to promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and witnesses have disappeared.' " 414 U.S. at 554, 94 S.Ct. at 766, *quoting Order of Railroad Telegraphers v. Railway Express Agency*, 321 U.S. 342, 348, 64 S.Ct. 582, 88 L.Ed. 788 (1944). These policies are satisfied "when . . . a named plaintiff found to be representative of a class commences a suit and thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment." 414 U.S. at 554–55, 94 S.Ct. at 767. In that situation, the defendant has received "the essential information necessary to determine both the subject matter and size of the prospective litigation." *Id.* at 555, 94 S.Ct. at 767.[4]

Thus, in the circumstances of *American Pipe,* the finding of typicality was signifi-

1. Inapplicable to the pending case is the district court's Local Rule 1–13 adopted in August, 1973, after the commencement of this lawsuit. That rule provides:

   (b) Motion for Certification

   Within 90 days after the filing of a complaint in a case sought to be maintained as a class action, the plaintiff shall move for a certification under Rule 23(c)(1), Federal Rules of Civil Procedure, that the case may be maintained as a class action. In ruling upon such motion, the court may allow the action to be so maintained, may deny the motion or may order that a ruling be postponed pending discovery or such other preliminary procedures as appear to be appropriate and necessary in the circumstances. Nothing in this section shall be construed to preclude a motion by a defendant at any time to strike the class allegations or to dismiss the complaint.

2. Here the parties sought to resolve initially the issue of whether the federal defendants were entitled to absolute immunity. In other cases the question of timeliness may be complicated by other considerations. *See generally* Local Rule 1–13, *supra* note 1.

3. Federal defendants say (Br. 12–13): "A plaintiff could file a complaint with class allegations, wait until he saw how the litigation was developing before he filed his motion for class

certification, and when that was denied, however long after the applicable statute of limitations had expired, claim the benefit of American Pipe to show that intervention was proper." District defendants say (Br. 20–21) that the delay in moving for certification had the effect of "giving [plaintiffs] or their attorneys substantial time to locate and identify additional parties who could potentially become plaintiffs by intervention if the District Court refused to certify the action as a class action."

These conjectured abuses can readily be countered by defendants' motion to reject class certification, or by a court rule (see fn. 1) imposing deadlines on motions for class certification. The extreme remedy advocated by defendants would involve the abuse perceived by the Supreme Court, which is not so amenable to other measures.

4. The Supreme Court's approach appears to be reflected in footnote 25, in which it discussed the possibility that in some situations the intervenors might raise issues not presented in the class action complaint. This problem, the Court noted, "will be minimized when, as here, the District Court has already found that the named plaintiffs' claim typify those of the class." But the Court did not indicate that this was the only means of protecting the defendant from unfair surprise.

cant because it served to assure the courts that the defendant had received fair notice of the intervenors' claims. However, the Supreme Court did not say that a finding of typicality was required. All that its opinion appears to require is that the defendant receive the "essential information necessary to determine both the subject matter and size of the prospective litigation," i. e., the "substantive claims" being pressed by the intervenors and "the number and generic identities" of those intervenors.

The propriety of such a broad, functional reading of *American Pipe* is indicated by the Supreme Court's most recent decision in this area, *United Air Lines v. McDonald,* —— U.S. ——, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1977). In that case the Court held that potential class members could intervene after final judgment for the purpose of appealing the denial of class certification, even though the statute of limitations had otherwise expired. The Court's opinion was written by Justice Stewart, who was also the author of *American Pipe.* In defending the adequacy of the notice provided to defendant, he did not refer to any finding of typicality by the district court, but rather noted that "The lawsuit had been commenced by the timely filing of a complaint for classwide relief, providing United with 'the essential information necessary to determine both the subject matter and size of the prospective litigation.' " *Id.* at ——, 97 S.Ct. at 2469.[5] Justice Stewart also pointed out in a footnote that the motion to intervene "concerned the same evidence, memories and witnesses as the subject matter of the original class suit," and that the defendant had not suffered prejudice from the date of intervention. At —— n.14, 97 S.Ct. at 2469.

Consistent with our view that a finding of typicality is not required for the application of *American Pipe* are several decisions

in which potential class members have been permitted to invoke the doctrine of that case in the apparent absence of such a finding. In *Morton v. Charles County Board of Education,* 373 F.Supp. 394 (D.Md. 1974), aff'd, 520 F.2d 871 (4th Cir.), cert. denied, 423 U.S. 1034, 96 S.Ct. 566, 46 L.Ed.2d 408 (1975), the court permitted certain class members to invoke *American Pipe* even though the plaintiff's claim was "probably" not representative of those of the class and even though circumstances surrounding the individual claims varied greatly. In *Goldstein v. Regal Crest, Inc.,* 62 F.R.D. 571 (E.D.Penn.1974), an earlier decision had denied class certification with respect to certain claims on the ground that individual questions predominated, but the district court explicitly held that this was not a basis for distinguishing *American Pipe.* See also *Jones v. Holy Cross Hospital of Silver Springs, Inc.,* 64 F.R.D. 586 (D.Md. 1974) (*American Pipe* could be invoked even though proposed class was too "amorphous" to be certified). *See generally Developments in the Law—Class Actions,* 89 Harv. L.Rev. 1318, 1452–53 (1976).

In sum, the relevant case law indicates that a finding of typicality is not required for the invocation of the tolling doctrine of *American Pipe.* Although a typicality finding is one indicator that the defendant has received adequate notice of the potential claims against him, the court can also determine whether the defendant has received fair notice by comparing the allegations of the class complaint with those of the intervenors. If the defendant has been notified through the class action of the number and generic identity of the potential intervenors and their substantive claims, then the statute of limitations may be viewed as tolled until denial of class certification. In determining whether the function of the statute of limitations has been served, it may be necessary to go beyond the facts of the complaint to analy-

---

**5.** The Court noted in footnote 13 that the unlawful discrimination alleged in the class complaint was plainly part of a company-wide policy.

sis of the specific evidence involved in the intervenor's action and to consideration of possible prejudice to the defendant. But if the court can conclude that the defendant has received "the essential information necessary to determine both the subject matter and size of the prospective litigation," then the doctrine of *American Pipe* may be applied.

Applying these principles to the case before us, appellants were entitled to intervention. The class complaint certainly informed the defendants of "the number and generic identities of the potential [intervenors]." It also provided fair notice as to many of the substantive claims later pressed by the intervenors. For example, it charged defendant Wilson with ordering the preparation of false arrest forms and alleged that defendant Murphy had maintained the prosecutions of those arrested in bad faith. These are only allegations, not proof, but they serve to identify this as a case where it can be seen from the two complaints that in both lawsuits liability is predicated on the same acts. Hence, there can be no doubt that the defendants have received sufficient notice of the contours of potential claims to toll the running of the statute of limitations.

Similarly, there would be no problem of unfair notice from any claim that appellants were subjected to the same or similar booking procedures as the named plaintiffs.[6] The filing of the class complaint alerted the defendants to appellants' claims based on the conditions of confinement and the dilatory or coercive nature of the booking process. Again, if plaintiffs and appellants were the subjects of a single broad decision about the length of detention or

the amount of collateral, then claims based on those events were also covered by the initial complaint.

We turn to the possibility that the class complaint may not have provided defendants with fair notice of all aspects of appellants' claims. The arrests of May 3, 1971, took place in different locations and under varying conditions. In some cases, the arrests may have been justified by probable cause, even though a field arrest form was not filled out. Since the experiences of the named plaintiffs have not been found to be typical of those of the appellants, and different witnesses and evidence may be involved, it is possible that the filing of the complaint on behalf of the named plaintiffs did not give defendants notice adequate to identify defense materials with respect to this portion of appellant's complaint.

On the other hand, it is also possible that the defendants suffered no prejudice from the timing of appellants' motion for intervention.[7]

We will not here attempt to delineate with precision or finality the extent to which appellants should be permitted to intervene in this action. We think that this task is better performed by the district judge, after he has received the views of the parties and made further inquiry into the relationships between the claims of the named plaintiffs and those of appellants. Once he has determined the breadth of the notice provided by the class complaint and the degree to which defendants may have been prejudiced by the timing of the motion for intervention, he can, if necessary, limit or condition appellants' rights of intervention.

---

6. If no such claim for damages is made, the issue is academic. We do not contemplate that intervenors would be entitled to present a claim distinctly different from that presented by the named plaintiffs. Indication of a broadly prevailing fact pattern appears from the records in such cases as *Sullivan v. Murphy, supra,* and *Dellums v. Powell, supra.*

7. We have not tried in this opinion to grapple with the issues that may arise, either as to intervention or on the merits, in consequence of the litigation before this court in *Sullivan v. Murphy, supra,* and on remand before the district court, which concluded that no showing of probable cause could be made with respect to those arrested on May 3 (except for those convicted after a trial on the merits) and ordered the records of those detentions destroyed.

## III. CLASS CERTIFICATION

Appellants argue that class certification was wrongly denied and that this court can reach that issue during this interlocutory appeal. Appellants recognize that in this circuit an order denying class status is not ordinarily appealable, *Williams v. Mumford,* 167 U.S.App.D.C. 125, 511 F.2d 363 (1974), *cert. denied,* 423 U.S. 828, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975), but contend that where, as here, the denial of certification is conjoined with a denial of intervention the ends of judicial efficiency might be served by hearing both appeals.

The case law on this issue is sparse. Appellants rely on *Monarch Asphalt Sales Co. v. Wilshire Oil,* 511 F.2d 1073 (10th Cir. 1975), in which the court reviewed a denial of class certification together with a denial of intervention on the ground that "the general rule is that interlocutory orders from which no appeal lies are merged into the final judgment and [are] open to review on appeal from that judgment." 511 F.2d at 1077. The federal defendants distinguish that case on the theory that there the trial court had entered "final judgment" in favor of the defendants against the putative intervenors, and thereby complied with Rule 54(b), whereas here the district court simply denied the motion to intervene. The government contends that while an order denying intervention is appealable, it is not the type of final decision on the merits into which an order denying class status is merged.

In the specific context of this case, we do not find it necessary to reach the questions framed by these contentions. Since we vacate the district court's denial of intervention, and give to appellants a right to participate in the lawsuit, we view their appeal of the denial of class certification as essentially interlocutory with respect to their continued participation in the lawsuit. We therefore find it inappropriate for decision at this time.

A different case might be presented were this court to affirm the denial of intervention, for in that situation appellants' only prospect of continued participation in the lawsuit would be through a reversal of the denial of class certification. That was the situation in *Monarch Asphalt Sales Co. v. Wilshire Oil, supra,* and we do not rule on it here. We merely hold that our reversal of the district court's denial of intervention makes it unnecessary for us to consider the issue of class certification.[8]

The order of the district court denying intervention is vacated. The case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

**8.** We recognize that our opinion does not necessarily provide appellants with complete rights of intervention in the lawsuit, and to that extent they have an interest in the denial of class certification. But since under our analysis any denial of intervention would probably be predicated on findings that the experiences of the named plaintiffs and appellants were too dissimilar to give adequate notice, it seems unlikely that class certification would be required.