Laverne JOHNSON, Georgia Herndon
and Jean Porfilio

v.

Harry BRACE and Harry Brace
Health Spa.

No. LR–75–C–158.

United States District Court,
E. D. Arkansas, W. D.

June 13, 1979.

John W. Walker, Little Rock, Ark., for plaintiffs.

James W. Stanley, North Little Rock, Ark., for defendants.

## MEMORANDUM OPINION

ROY, District Judge.

The complaint in this action was filed in the United States District Court, Eastern District of Arkansas, Western Division, pursuant to 42 U.S.C. § 2000a of the Civil Rights Act of 1964, known as the public accommodations section, and 42 U.S.C. § 1981. The plaintiffs alleged that they had been denied the use of the defendants' facilities because of their race or color or because they associated with blacks.

Trial to the Court was held on April 9, 1979.[1] After both parties had rested, the plaintiffs' attorney moved to amend the pleadings to conform to the evidence, to allow a prayer for punitive damages, and to allow one of the witnesses to intervene as a party plaintiff, and to be awarded damages. The court granted the motion to amend the pleadings to conform to the evidence and to include a prayer for punitive damages. The motion to allow the witness, Pearl Herman, to intervene was taken under advisement and will be granted for the reasons set out hereafter. The court then announced its judgment in favor of the named plaintiffs, assessed compensatory damages in the amount of $1,500 and punitive damages in the amount of $250 for each plaintiff. In addition, the defendants were enjoined from engaging in discriminatory practices. Class action certification was denied.

## FINDINGS OF FACT

1. The plaintiffs, Laverne Johnson and Georgia Herndon, are black citizens of the United States who reside in Pulaski County, Arkansas.

2. The plaintiff, Jean Porfilio, is a white citizen of the United States who resides in Pulaski County, Arkansas.

3. The defendants are Harry Brace and Harry Brace Health Spa, Incorporated. Defendant Harry Brace is the sole owner of the stock of the Harry Brace Health Spa, Incorporated.

4. The Spa began operation in Little Rock, Arkansas in 1970 at its present address, 3110 University Avenue, Little Rock, Arkansas. The Spa is a modern health care facility operated by Harry Brace and his employees for profit. The facility provides a range of physical fitness services for customers.

5. During 1974 and 1975 the Harry Brace Health Spa engaged in a series of advertising promotions designed to obtain additional customers. These promotions used radio, newspaper and television media, and were addressed to the general public.

6. Harry Brace employed a number of people to perform the services necessary to operate the establishment, including customer relations and sales. His sales force

---

1. Although the complaint in this case was filed on May 23, 1975, the case was not assigned to Judge Roy's docket until September 1, 1978 and was handled as soon thereafter as it could be reached on the docket.

was instructed that after each promotion they were to take the names and addresses of prospective customers who called; at the time of the call attempt to determine the racial identity of the caller by the sound of the voice; to discard the names and telephone numbers of identifiable blacks; to call back the others who made inquiry.

7. In the event a return call indicated a mistake had been made in the first analysis of the voice and the party was indeed black, the sales person was instructed to tell the black person called that it was too late to qualify for the benefits or other advantages of the promotion. If a black person persisted, that person was to be referred to a karate program rather than the full range of programs at the Spa.

8. The sales persons were further instructed that if the screening program set forth in paragraph 7 was unsuccessful and if some blacks did come to the Spa to claim the advantages of the promotion, or if they walked in off the street, those blacks were to be discouraged by the sales person. One method was by stating exorbitant charges for membership.

9. Plaintiffs were good faith, actual, or prospective customers of the Harry Brace facility. Laverne Johnson (black) was a guest of Jean Porfilio (white) who was a satisfied previous customer of the Spa. She and Ms. Johnson sought to utilize the "shopping spree" certificates that Jean Porfilio had purchased. When they presented themselves and their certificates at the Spa a female employee treated them discourteously, refused to recognize the certificates as valid, and referred them against their will to the karate program. This incident occurred in full view of Harry Brace. The reason given for refusing to honor the shopping spree certificates was that the membership was full except for the karate program and that a new karate class would be starting soon. When Ms. Porfilio questioned the Spa's failure to honor the plain language of the certificates the employee ordered both Ms. Porfilio and Ms. Johnson out of the facility. There was no testimony at the trial that the Spa membership was at any time full during the period in question. Mr. Brace admitted that new members were continually sought for the Spa.

10. In March, 1975 Georgia Herndon responded to a Harry Brace television promotion by calling the Spa. She was told that she had won a certificate entitling her to a one month free membership and that she should come to the Spa and pick up the certificate. When she arrived she was told that the certificate was to be used for karate only, rather than for the entire facility as she had been told by the telephone sales person. Plaintiff reluctantly accepted the limited membership and returned to the Spa at the time she was told the class was to begin. When she arrived, a male employee of the Spa told her that she had come to the wrong place. The employee verbally abused her and demanded that she leave the premises which she did.

11. There was no karate class in progress at the time Ms. Herndon was told to return to the Spa.

12. Pearl Herman, the intervenor, is a black female. She went to the Spa in mid-1975 because of her desire to participate in a regular physical fitness program and because of her physician's instructions regarding out-patient therapy for an automobile accident injury she sustained in January of 1975. Her financial status was more than adequate to finance a membership in the Spa and she had her checkbook ready to join and to pay the full fee for membership. However, when she entered the facility she was first ignored and then one of the employees insisted that she must be in the wrong place and that she would feel more comfortable down the street with her class of people.

13. All of the plaintiffs and the intervenor, Pearl Herman, are persons worthy of belief who presented substantial credible testimony of a very specific nature.

14. The Spa basically treated all black customers in the same manner as they treated the plaintiffs and intervenor, Pearl Herman.

15. Harry Brace does not keep records by race but testified that he and his employees are opposed to practices of racial discrimination but no credible evidence was presented contrary to the specific proof of plaintiffs and the intervenor. Harry Brace presented no evidence that the discriminatory practices have been discontinued since these incidents occurred in 1974 and 1975, and there is no indication that he will not engage further in similar conduct.

16. The Harry Brace Spa uses expensive modern equipment which moves or has moved in interstate commerce.

17. The Brace facility is located on a major thoroughfare in Little Rock, Arkansas in close proximity to two interstate highways. It is directly west of the University of Arkansas at Little Rock, a major state institution of higher learning.

## CONCLUSIONS OF LAW

This court has jurisdiction pursuant to 28 U.S.C. § 1343(4) and 28 U.S.C. § 2201. It is a violation of 42 U.S.C. § 2000a for anyone to be denied, on the ground of race, color, religion, or national origin, the equal enjoyment of the services, facilities and privileges of a public facility. The Harry Brace Health Spa is a place of public accommodation affecting commerce. *Rousseve v. Shape Spa for Health & Beauty, Inc.,* 516 F.2d 64 (5th Cir. 1975), *cert. denied,* 425 U.S. 911, 96 S.Ct. 1505, 47 L.Ed.2d 761 (1976) and *Heart of Atlanta Motel, Inc. v. United States,* 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964).

Defendants have practiced unlawful discrimination against the named plaintiffs and intervenor, Pearl Herman, by reason of their race or color or because of their association with blacks.

This case was initially filed as a class action and intervenor Pearl Herman relied upon her attorney's advice that she would be protected as a class member and would not have to file an independent lawsuit against defendants.

At the time of trial the court denied certification of class action under Rule 23(b)(2) because the requirements of the rule had not been complied with. The plaintiffs did not object to this action. The court finds it proper, however, that the original complaint be amended to conform to the evidence adduced at trial and that Pearl Herman be permitted to be a party plaintiff in this action.

Rule 15(c) of the Federal Rules of Civil Procedure provides, *inter alia,* "whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." In the instant case, the original plaintiffs sought to bring this cause as a class action pursuant to the provisions of Rule 23(b)(2) Fed.R.Civ.P. to protect and redress the interests, rights and claims of all black persons similarly situated, as applicants, with respect to the defendants. Therefore the defendants were aware that additional complaints might be forthcoming and had actual and constructive notice of the range of complaints that may have been presented. Pearl Herman was an applicant for membership with the defendant Spa who was wrongfully denied her constitutional right to contract.

The application for intervention by Ms. Herman was made prior to the court's announcing its decision and is timely because the complaint was filed as a class action and thereby tolled the statute of limitation. *McCarthy v. Kleindienst,* 183 U.S.App.D.C. 321, 562 F.2d 1269 (1977); *United Airlines, Inc. v. McDonald,* 432 U.S. 385, 97 S.Ct. 2464, 53 L.Ed.2d 423 (1976); *American Pipe & Construction Co. v. Utal,* 414 U.S. 538, 94 S.Ct. 756, 38 L.Ed.2d 713 (1974). In opposition to the motion for intervention the defendants claimed that they were prejudiced because they had no prior knowledge that the intervenor would be a party to the action. The court finds that there was no prejudice to the defendants and no real surprise either in her testimony or her motion to be joined as a party.

The evidence at trial established that the defendants engaged in practices of

**1060**

intentional discrimination against the plaintiffs and other blacks in violation of 42 U.S.C. § 1981. The plaintiffs established injury for which they are entitled to compensation with evidence that they were embarrassed and humiliated by defendants' conduct. They are thus entitled to damages to compensate them for those losses. *Cf. Sullivan v. Little Hunting Park,* 396 U.S 229, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) (compensatory damages may be assessed for violation of 42 U.S.C. § 1982).

Where the defendant has acted willfully and in gross disregard for the rights of others, punitive damages may be awarded. *Davis v. Board of Trustees,* 270 F.Supp. 528 (W.D.Ark.1967), *aff'd* 396 F.2d 730 (8th Cir.), *cert. denied* 393 U.S. 962, 89 S.Ct. 401, 21 L.Ed.2d 375 (1968). The defendants' actions were willful and in gross disregard of the rights of the plaintiffs and the intervenor, therefore punitive damages are assessed. The defendants are liable jointly and severally to each plaintiff and the intervenor in the sum of $1,500 as compensatory damages and $250 punitive damages. Injunctive relief is warranted by the facts as authorized by 42 U.S.C. § 2000a–3.

Counsel for plaintiffs having prevailed in this action are entitled to a reasonable attorneys' fee based upon the criteria set forth in *Brown v. Bathke,* 588 F.2d 634 (8th Cir. 1978). The attorneys for plaintiffs in this action have requested the sum of $11,910.00. The facts of this case do not warrant imposition of attorneys' fee of this amount. *Brown, supra,* sets forth the criteria the court should follow in deciding what is a reasonable attorneys' fee in each case. Among the factors to be considered are the complexity of the legal issues involved, the appropriate hourly rate to be paid for the attorneys' services, and "the number of hours *which should be required* to completely prepare and try a case of this type," as well as the success in handling the case. [emphasis added] The affidavit in support of the attorneys' request indicates that six attorneys worked on the case. However, all the attorneys were either in the same law firm with the plaintiffs' chief attorney,

John W. Walker, or worked under his direction. Their affidavits indicate the following: David E. Parker, Jr.—38.5 hours; Ralph Washington—41.5 hours; for a total of 80 hours at $60 per hour. The affidavit of John W. Walker states that his hours include assistance by Ms. Linda Scholle and Ms. Vashti Varnado and Mr. Henry L. Jones. For their joint efforts he filed an affidavit of 40 hours for the three attorneys mentioned and 39 hours for himself at a rate of $90 per hour. Even if we assume the number of hours reflected in the affidavits as being true and correct, much of the time expended must have been duplicative, the less experienced attorneys evidently learning by observation of and direction from Mr. Walker.

The court recognizes Mr. Walker's expertise in this field, however, we should not penalize defendants by imposing a fee of this amount, a part of the time which was spent being attributable to the learning experience of the younger members of the firm. The evidence reflected that the legal issues involved were not unusual or complicated. There was only one pretrial held in the case and it lasted approximately 15 minutes. The actual trial time, including closing arguments of the attorneys, took less than five hours. The case was tried to the court, at which time plaintiffs were represented by three attorneys while the defendants were represented by only one attorney.

When we consider the factors enunciated in the *Brown case, supra,* the court finds that a reasonable attorneys' fee is $5,500.00, including the efforts of counsel in representing Pearl Herman.

An Order pursuant to the Findings of Fact and conclusions of Law set forth in this opinion will be filed of record this date.