Sheppard v. River Valley Fitness        CV-00-111-M   09/27/01  P

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


<u>Mary Chris Sheppard and</u>
<u>Robert Sheppard</u>

   v.                                    Civil No. 00-111-M
                                         Opinion No. 2001 DNH 177
<u>River Valley Fitness One, L.P. d/b/a</u>
<u>River Valley Club, et al.</u>


**O R D E R**


The plaintiffs have moved for sanctions against the
defendants and/or their counsel, William Edward Whittington, IV
("Whittington"), as a result of alleged discovery abuses in this
matter and allegedly improper litigation tactics in the related
case of <u>Aubin v. River Valley Fitness One L.P., et al.</u>, Civil No.
00-110-B ("<u>Aubin</u>"), which has been closed.  This Order addresses
both the plaintiffs' request for sanctions pursuant to Fed. R.
Civ. P. 26(c) that was included in their April 23, 2001 motion
for relief from protective order (document no. 73) and the
plaintiffs' June 18, 2001 emergency motion for additional
sanctions pursuant to Fed. R. Civ. P. 37 and/or Local Rules
1.3(a) and 37.1(b) (document no. 87).  I will discuss each of

1

these motions separately.[1]

<u>April 23, 2001 Motion for Sanctions</u>

On May 23, 2001, I granted the plaintiffs' motion for relief from a protective order that I had entered on behalf of the defendants.  The plaintiffs request sanctions, pursuant to Fed. R. Civ. P. 26(c), on the grounds that the defendants had no legitimate basis for seeking the protective order in the first instance.

The defendants moved for the protective order on March 29, 2001, in order to prevent the disclosure in this case of documents pertaining to the settlement of the <u>Aubin</u> matter.  In support of their motion, the defendants argued, *inter alia*, that the settlement agreement with Aubin "has no bearing on any of the issues in this case, and is not calculated to lead to admissible

---

[1]Defendant River Valley Fitness One, L.P. filed for relief under the Bankruptcy Code of 1978, and this action was stayed with respect to that entity pursuant to 11 U.S.C. § 362.  There is a split in authority as to whether the court may sanction a debtor or hold it in contempt in light of the automatic stay. <u>Compare</u> <u>In re Dumas</u>, 19 B.R. 676, 678 (9th Cir. 1982), <u>and</u> <u>David v. Hooker, Ltd.</u>, 560 F.2d 412, 418 (9th Cir. 1977), <u>with</u> <u>In re Atkins</u>, 176 B.R. 998, 1005-06 (D.Minn. 1994), <u>and</u> <u>In re Cherry</u>, 78 B.R. 65, 70 (E.D. Pa. 1987).  Here, however, I need not decide whether the automatic stay precludes the court from considering the plaintiffs' motions for sanctions because I find that while defense counsel's actions justify sanctions against him, nothing in the record demonstrates that sanctions are warranted as a result of the defendant debtor's conduct.

evidence." See Document no. 67. On March 30, 2001, I entered an order in favor of the defendants. The order directed the defendants to produce the settlement documents to plaintiffs' counsel, but precluded the disclosure of the documents to plaintiffs or third parties except under limited circumstances. Thereafter, on April 3, 2001, Whittington sent plaintiffs' counsel a number of documents pertaining to the Aubin settlement.

The documents demonstrate that Whittington misled the court when he argued that the Aubin settlement is irrelevant to the issues in this case. They also indicate that the true impetus for seeking the protective order was Whittington's desire to conceal his conduct in this case and in the Aubin matter.

1.   The Relevance of the Aubin Settlement

The settlement documents reveal that as a condition of the settlement, Aubin agreed to assist the defendants "in good faith and to the best of his ability," and to "provide truthful affidavits, on a continuing basis until the Sheppard case is resolved."[2] Aubin is a material witness in this case. As Whittington well knows, the settlement documents are directly

---

[2]See Exhibit 1 to plaintiffs' Sealed Motion for Relief from Protective Order and Request for Sanctions Pursuant to Rule 26(c).

3

relevant to Aubin's credibility.

2.    Use of Settlement to Intimidate the Plaintiff

On October 6, 2000, Whittington wrote a letter to the plaintiffs' counsel in which he stated,

> Attached please find a Stipulation to Judgment signed by Judge Barbadoro on October 4 in the amount of $50,000 in RVC's[3] favor in the Aubin case.  It is clear that, when presented with the extensive evidence that we have compiled in support of our counterclaims against him and our motion for summary judgment on his own claims, Aubin and his counsel saw that the litigation had only one possible outcome.
>
> The $50,000 judgment, and the likelihood that it will soon become public, prompt us to re-visit with you the subject of settlement.

Whittington then proposed that the plaintiffs settle this case, in which the defendants have asserted substantially the same counterclaims that they asserted in the Aubin action, by paying the defendants $50,000.

The settlement documents show that in fact Aubin agreed to pay only $100 of the $50,000 judgment.  In his October 6 letter, Whittington intentionally misled the plaintiffs into believing that Aubin did commit to a $50,000 payment in order to intimidate

_____

[3]RVC refers to defendant River Valley Club.  In the context of the Aubin settlement, the term "RVC" included all of the defendants in the Aubin case.

4

them into a $50,000 settlement in this case.[4]  It appears to this court that the defendants' quest for a protective order was motivated at least in part by Whittington's desire to conceal this conduct.

    3.  <u>Misrepresentations to the Court in the Aubin Case</u>

Another reason for Whittington to maintain the secrecy of the <u>Aubin</u> settlement documents was to conceal his deceptive conduct in the <u>Aubin</u> case.  The documents show that on August 16, 2000, the parties to the <u>Aubin</u> action reached a settlement in principle.  The parties specifically agreed, however, to delay filing the stipulated judgment and other settlement documents with the court until the court ruled on the defendants' motion to obtain discovery from two witnesses, Brannen and Panzica.  The

---

[4]Whittington also used the $50,000 judgment to persuade this court to adopt the defendants' version of disputed facts.  A footnote to the Defendants' Memorandum Supporting Their Motion for Summary Judgment states, "While defendants are required to credit plaintiffs' statements for purposes of summary judgment, they take strong issue with them on the merits.  As set forth in RVC's counterclaims, the true facts are that Sheppard's "complaint" was wholly insincere and false . . . Aubin's parallel suit in this Court . . . has already been resolved with judgment in RVC's favor on all of Aubin's claims, and judgment of $50,000 for RVC on its counterclaims against him."  Although technically accurate, this argument suggests an intention to mislead the court into believing that the facts so strongly favor the defendants that Aubin agreed to pay $50,000 to settle their counterclaims in his case.

parties further agreed to "jointly inform the Court we're close to settlement, jointly request it reschedule the status hearing for late September, and tell the Court it would help the parties' settlement negotiations to get a prompt ruling on the Brannen/Panzica motions, which Aubin will now join." This is in fact what occurred.

A federal court has no jurisdiction over a matter absent an actual case or controversy. "The settlement of an individual claim typically moots any issues associated with it." United Airlines, Inc. v. McDonald, 432 U.S. 385, 400 (1977)(Powell, J., dissenting). Even if the Aubin matter was not settled on August 16, it was settled prior to the court's September 12, 2000 ruling on the Brannen motion.[5] By that time, the defendants had signed the release and satisfaction of judgment and the parties had finalized an affidavit that Aubin had promised to provide as a condition to settlement.

Both Whittington and the defendants insist that settlement was contingent upon the defendants' ability to corroborate Aubin's affidavit using the discovery obtained from Brannen and Panzica. Nothing in the settlement documents even suggests that

---

[5]The Panzica motion became moot on August 21, 2001, and the court denied the motion on that basis.

6

this is true. Moreover, the defendants' assertions are belied by Whittington's own concession at the June 13, 2001 sanctions hearing that the defendants would have settled without the ability to corroborate Aubin's testimony had the court denied their discovery requests.

Whether or not counsel in the Aubin matter recognized that the discovery motions had become moot as a result of the settlement, the record demonstrates that they were not candid with the court. Whittington, therefore, had a personal stake in preventing the disclosure of the settlement documents in this case.

Fed. R. Civ. P. 26(c) governs motions for a protective order. It states that "[t]he provisions of Rule 37(a)(4) apply to the award of expenses incurred in relation to the motion." Rule 37(a)(4) authorizes the court to require a party or its attorney to pay reasonable expenses, including attorney's fees, incurred in connection with a motion for protective order that was not substantially justified. Here, the defendants' motion for protective order was not substantially justified. Accordingly, Whittington shall personally compensate the plaintiffs for their expenses, including reasonable attorney's

7

fees, incurred in connection with their opposition to and motion for relief from the protective order.

<u>June 18, 2001 Emergency Motion for Sanctions</u>

Following the sanctions hearing that occurred in connection with the motion for relief from the protective order, the plaintiffs moved for additional sanctions pursuant to Local Rules 1.3(a) and 37.1(b) and Fed. R. Civ. P. 37. As grounds for their motion, the plaintiffs assert: (1) both Whittington and the defendants intentionally withheld discoverable material information concerning the <u>Aubin</u> settlement; (2) new information produced after the June 13, 2001 sanctions hearing further demonstrates that the <u>Aubin</u> case was settled prior to the court's rulings on the Brannen and Panzica discovery motions; (3) in a May 30, 2001 affidavit that was submitted to the court, Whittington misrepresented the nature of his involvement in preparing Aubin's affidavit; (4) Whittington withheld documents contradicting his representations to the court that the <u>Aubin</u> settlement could not have been settled prior to October 2000 because the Aubin affidavit had to be reviewed in light of the Brannen discovery; (5) Whittington failed to correct Aubin's trial deposition testimony regarding the preparation of the Aubin

8

affidavit; (6) defendants Joseph and Elizabeth Asch improperly failed to produce a copy of the Aubin affidavit; and (7) the Asches improperly used the Aubin settlement documents to intimidate plaintiff Mary Chris Sheppard, and to discredit Sheppard's claims to third parties.

As discussed above, Whittington's conduct in the Aubin matter is significant here because it explains the true purpose for seeking the protective order. To the extent that the plaintiffs are requesting sanctions for Whittington's actions in the Aubin matter, however, their request is denied, as I have no authority to consider that issue. See 28 U.S.C. § 636(describing jurisdiction and powers of federal magistrates).[6] The plaintiffs' remaining arguments are addressed below.[7]

---

[6]Because I find that the facts supporting the motion for additional sanctions do not justify a sanction that would be dispositive of the claims in this case, I reject the defendants' argument that I lack jurisdiction to consider the motion due to the relief that the plaintiffs are seeking. Moreover, even if the record supported dismissal, I would have the authority to recommend to the district judge that the requested relief be granted. See 28 U.S.C. § 636(b).

[7]Although the court previously sanctioned Whittington for discovery abuse relating to his failure to produce documents concerning damages, it did not sanction him for failing to produce documents pertaining to the Aubin settlement. See Document No. 88.

9

1.    <u>Failure to Produce Discovery</u>

On January 31, 2001, the plaintiffs served upon the defendants a request for documents pertaining to the settlement between the defendants and Aubin.  The discovery request defined the term "documents" broadly, encompassing both paper documents and electronic communications.  After the defendants declined to disclose the documents on the grounds that the production deadline fell after the discovery cutoff date, the plaintiffs moved to compel production.  On March 22, 2001, this court granted the plaintiffs' motion to compel production of the documents on or before April 6, 2001, the date of Aubin's trial deposition.  On April 3, 2001, Whittington sent plaintiffs' counsel documents concerning the <u>Aubin</u> settlement.

In a letter dated April 4, 2001, plaintiffs' counsel reminded Whittington that the discovery request sought, among other things, e-mail and other electronic communications.  Whittington does not recall receiving this letter.  In June, following a sanctions hearing before this court, plaintiffs' counsel wrote to Whittington again and reminded him of the defendants' obligation to produce any responsive documents that are stored on a computer.  Subsequently, on June 15, 2001,

10

Whittington produced settlement documents that he retrieved from floppy disks located in his office. Whittington states that any other documents that he may have created in connection with the negotiation of the Aubin settlement have been lost or destroyed.

Notwithstanding Whittington's habit of trying to obstruct discovery in this case, I find that in this instance Whittington's failure to produce computer records and to retain all drafts or other documents relating to the Aubin settlement reflects a lack of diligence rather than an intentional effort to abuse the discovery process. Nevertheless, Whittington's failure to fully comply with this court's March 22 order has unfairly prejudiced the plaintiffs by depriving them of the opportunity to question Aubin about the contents of the documents. Pursuant to Local Rules 1.3(a) and 37.1(b), therefore, I order Whittington to pay $500 to the plaintiffs as a sanction.[8] As a further sanction for Whittington's failure to timely comply with my order, I grant the plaintiffs' motion in limine to preclude Aubin from

---

[8]Local Rule 37.1(b) states, "[w]hen the court rules on a discovery motion, the discovery requested or relief sought shall be provided within ten (10) days of the court order, unless the court specifies a different time." Local Rule 1.3(a) authorizes the court to impose sanctions it deems appropriate for failure to comply with the Local Rules.

11

testifying in person at trial.[9]

   2.  Acts and Omissions Regarding Preparation of
       Aubin's Affidavit

     The plaintiffs accuse Whittington of perjuring himself in an affidavit filed with the court by misrepresenting the nature of his involvement in the preparation of the Aubin affidavit.  They further insist that Whittington improperly neglected to correct Aubin's trial deposition testimony regarding the affidavit.  Although Whittington's poor judgment throughout the discovery period has cast a shadow upon all of his activities in this case, the record provides scant support for these accusations.

     In a May 30, 2001 affidavit, Whittington described his input with respect to the Aubin affidavit as consisting of locating information from documents and deposition testimony and providing it to Aubin's counsel.  The plaintiffs suggest that Whittington intentionally neglected to include the fact that he drafted the first version of the affidavit because he was trying to hide that information from the plaintiffs.  Whittington's role in creating

_____

   [9]A party cannot avoid the consequences of its attorney's unexcused conduct.  See Damiani v. Rhode Island Hosp., 704 F.2d 12, 16 (1st Cir. 1983).  To the extent the defendants' case suffers as a result of the sanction for Whittington's failure to timely comply with my March 22, 2001 order, the defendants must accept it as a result of their choice of counsel.

12

the affidavit is not inconsistent with his sworn testimony. Preparing the initial draft of the Aubin affidavit can be seen as a means of providing information to Aubin's counsel. Accordingly, nothing in the record confirms the plaintiffs' suspicions about Whittington's choice of language.

Nor does the record support the plaintiffs' contention that Whittington failed to correct inaccurate deposition testimony. During his trial deposition, Aubin, who was represented by counsel, was questioned about the preparation of his affidavit. Aubin testified that his attorney assisted him in preparing the affidavit, that he did not recall who typed the affidavit, and that to his knowledge, Whittington had input regarding topics addressed in the affidavit but not regarding the information contained in those topics. In fact, the record shows that Whittington typed the initial version of the affidavit and had significant input regarding the topics contained in the affidavit. This evidence, however, is not inconsistent with Aubin's testimony regarding his own knowledge of events.

3.   The Defendants' Alleged Improprieties

The plaintiffs have asked the court to dismiss the defendants' counterclaims and enter a default judgment against

13

the defendants with respect to the plaintiffs' claims. The plaintiffs contend that these extraordinary sanctions are justified because defendants Joseph and Elizabeth Asch failed to produce a copy of the Aubin affidavit and intentionally misused the Aubin settlement documents to intimidate the plaintiff and third party witnesses. There is insufficient evidence, however, to show that the Asches intentionally withheld discovery or otherwise engaged in sanctionable behavior.

The evidence shows that during the course of the litigation, Whittington forwarded a draft of the Aubin affidavit to Joseph Asch. The plaintiffs argue that Asch failed to produce this document, which was responsive to the plaintiffs' document request. There is no evidence, however, that Asch recalled receiving the document or was aware that it should have been disclosed to the plaintiffs. Under these circumstances, I can find no justification for imposing sanctions upon the defendants.

Additionally, the evidence concerning Elizabeth Asch's use of the settlement documents is insufficient to warrant sanctions against the defendants. Specifically, the plaintiffs allege that Elizabeth Asch wrote a letter to the River Valley Club limited partners in which she mischaracterized the Aubin settlement by

14

suggesting that the <u>Aubin</u> court rejected Aubin's factual claims and accepted the defendants' counterclaims. The plaintiffs state that some of the limited partners to whom the letter was directed were expected to testify on behalf of Sheppard in this case, and suggest that the letter, as well as a second letter mischaracterizing the settlement, constituted an attempt to discredit the plaintiff. Although Asch's letters are misleading because they suggest that the <u>Aubin</u> case was resolved on the merits rather than through settlement, the record is void of any evidence regarding Asch's motivation for writing the letters, the identity of those who actually read the letters, and the impact, if any, that the letters had on potential witnesses. Moreover, nothing in the record supports the plaintiffs' contentions that the letters were part of a coordinated effort to defraud the plaintiffs.

In this circuit, the sanction of dismissal "'is a harsh sanction,' which runs counter to our 'strong policy favoring the disposition of cases on the merits'." <u>See</u> <u>Figueroa Ruiz v. Alegria</u>, 896 F.2d 645, 647 (1st Cir. 1990)(quoting <u>Richman v. General Motors Corp.</u>, 437 F.2d 196, 199 (1st Cir. 1971); <u>Zavala Santiago v. Gonzalez Rivera</u>, 553 F.2d 710, 712 (1st Cir. 1977)).

Here, there is insufficient evidence of any action by the defendants that would justify sanctions, much less the severe sanctions of dismissal and default that the plaintiffs request.

<u>Conclusion</u>

Whittington's efforts to obstruct discovery, mislead the plaintiffs, and conceal his own improper conduct has hindered the plaintiffs' ability to conduct a thorough trial deposition and has caused unnecessary expense and unfair delay.  This court will not tolerate such a deviation from the standards which govern members of the legal profession.  The plaintiffs' motion for sanctions contained in their motion for relief from protective order (document no. 73) is granted.  The plaintiffs' emergency motion for additional sanctions (document no. 87) is granted in part and denied in part.  Justice requires that Whittington be sanctioned in accordance with this Order.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: September 27, 2001

cc:   Lauren S. Irwin, Esq.
      William Edward Whittington, IV, Esq.
      Joseph F. Daschbach, Esq.

16