# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Filed December 5, 2022

No. 20-5291

HUMANE SOCIETY OF THE UNITED STATES, ET AL.,
APPELLANTS

v.

UNITED STATES DEPARTMENT OF AGRICULTURE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:19-cv-02458)

———

On Petition for Rehearing and Motion to Intervene

———

Before: MILLETT* and RAO**, *Circuit Judges*; and TATEL*,
*Senior Circuit Judge*

## O R D E R

Upon consideration of the Tennessee Walking Horse
National Celebration Association's ("Association") motion to
intervene, the responses thereto, and the reply; the Association's
lodged petition for rehearing and rehearing en banc; and
appellees' petition for panel rehearing filed on October 6, 2022,
it is

**ORDERED** that the motion to intervene be denied. It is

**FURTHER ORDERED** that appellees' petition for panel rehearing be denied. On remand, the district court may consider all remedial issues, including the question of whether remand to the agency without vacatur is appropriate under the criteria established by Circuit precedent.

**<u>Per Curiam</u>**

**FOR THE COURT:**
Mark J. Langer, Clerk

BY: /s/
Michael C. McGrail
Deputy Clerk

\* A statement by Senior Circuit Judge Tatel, with whom Circuit Judge Millett joins, concurring in the denial of the motion to intervene, is attached.

\*\* Circuit Judge Rao would grant the motion to intervene and has abstained from voting on the petition for panel rehearing. A statement by Circuit Judge Rao, dissenting from the denial of the motion to intervene, is attached.

TATEL, *Senior Circuit Judge*, with whom *Circuit Judge* MILLETT joins, concurring in the denial of the motion to intervene: Our dissenting colleague believes that this case "implicates important questions about the timing and finality of administrative rulemaking." Dissenting Op. at 1. But the Department of Agriculture ("the Department"), whose 2017 rule is at issue, disagrees. After consulting with the Solicitor General, it has foregone en banc review and instead decided that the best way to defend its withdrawal of the rule was to file a petition for rehearing asking the panel to clarify that, on remand, "the district court should be allowed to consider all remedial issues, including the question of whether remand to the agency without vacatur is appropriate." Pet. for Reh'g at 1. Not only have we granted that request, but proposed intervenor, the Tennessee Walking Horse National Celebration Association ("the Association"), advises that it would be satisfied with just that relief. *See* Association Pet. for Reh'g at 15–16 (requesting that "at a minimum" the district court "should have maximum flexibility on remand to address competing considerations and determine the best use of the parties' and the court's resources in fashioning a remedy"). This modest request makes sense given that the Department is in the late stages of developing a rule addressing the same topic as the 2017 rule, a fact the district court can consider when determining the proper remedy. Under these circumstances, I cannot imagine why we would allow the Association to intervene so that it can file an en banc petition that could not possibly satisfy our rigorous standards. *See* Fed. R. App. P. 35(a) (granting en banc rehearing only "when necessary to secure . . . uniformity of the court's decisions" or to decide "question[s] of exceptional importance").

Our case law, moreover, supports denying intervention here. Because no rule governs appellate intervention, we consider the "policies underlying intervention" in the district courts when evaluating a motion to intervene. *Automobile Workers v. Scofield*, 382 U.S. 205, 217 n.10 (1965). Those

policies include consideration of the legal interest the parties seek to protect and whether the motion is "timely." Fed R. Civ. P. 24(a)(2). The timeliness requirement is dispositive here. Under our court's standard practice, we grant motions to intervene at the appellate stage only in "exceptional case[s] for imperative reasons." *Amalgamated Transit Union International, AFL-CIO v. Donovan*, 771 F.2d 1551, 1552 (D.C. Cir. 1985) (per curiam) (internal quotation marks omitted). Moreover, a "motion for leave to intervene [that] comes after the court of appeals has decided a case," like here, "should be even more disfavored." *Id.* at 1553.

The case our dissenting colleague relies on, *Cameron v. EMW Women's Surgical Center*, 142 S. Ct. 1002 (2022), does not require us to grant the motion to intervene. In *Cameron*, where the Supreme Court allowed the Kentucky attorney general to intervene post-merits after the Kentucky secretary for Health and Human Services declined to continue defending the constitutionality of a state law, the proposed intervenor's legal interest was paramount. The Court repeatedly placed its focus on the "substantial legal interest that sounds in deeper, constitutional considerations," and emphasized the "strength" of the Kentucky attorney general's interest. *Cameron*, 142 S. Ct. at 1010–12. As the Court explained, a "State's opportunity to defend its laws in federal court should not be lightly cut off." *Id.* at 1011. No such sovereignty concerns are present in this case.

Even were we to focus, as does the dissent, on *Cameron*'s timeliness inquiry in isolation—that is, unconnected to its earlier discussion of sovereignty—it still does not require us to permit intervention. Dissenting Op. at 3. Explaining that "timeliness is to be determined from all the circumstances," the Court in *Cameron* concluded that the attorney general's motion was timely because he sought to intervene "'as soon as it

became clear'" that Kentucky's interests "'would no longer be protected'" by the parties remaining in the case—that is, when the Health and Human Services secretary declined to continue pursuing review. *Cameron*, 142 S. Ct. at 1012 (quoting *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 394 (1977)). Here, by contrast, the Department continued pursuing review: it petitioned for rehearing.

According to the dissent, this was the wrong kind of review. Because the Department's petition focuses on remedy as opposed to the merits, the Association must be permitted to intervene to defend its own interests. Dissenting Op. at 3, 4–5. But this would allow intervention in situations even broader than in *Cameron*. It would allow a third party to intervene not because an agency failed to move for additional review, but because the agency failed to move for review in the third party's preferred way. The problem with this reasoning is, again, timeliness. The Association has long been on notice that its interests were not the same as the Department's, a government agency bound to represent the "interests of the American people." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). In representing the public, the Department may favor different arguments than a private third party. *Dimond v. D.C.*, 792 F.2d 179, 193 (D.C. Cir. 1986). For example, the Department may, as it apparently has, determine that the best way to defend its rule withdrawal is to convince the lower court to allow it to complete rulemaking for the replacement rule instead of vacating. It is not for the Association to now second guess the Department's strategy by intervening. Aware from the beginning of this case that its interests may differ, the Association could have intervened in order to influence the way the Department defended the 2017 rule withdrawal. An eleventh-hour motion to do so now is untimely.

RAO, *Circuit Judge*, dissenting from the denial of the motion to intervene: I would grant the motion to intervene of the Tennessee Walking Horse National Celebration Association ("Association"). The Association's interests were adequately represented by the government until this point, but now the Government has declined to seek rehearing en banc. The Association satisfies the requirements for intervention of right under Federal Rule of Civil Procedure 24(a)(2), and the Supreme Court's recent decision in *Cameron v. EMW Women's Surgical Center, P.S.C.*, 142 S. Ct. 1002 (2022), makes clear the motion is timely.

\* \* \*

The Association is a nonprofit organization that runs the National Celebration, a show featuring Tennessee walking horses. The Association requests intervention to seek further review of this panel's decision in *Humane Society of the United States v. USDA*, 41 F.4th 564 (2022), which holds the withdrawal of a rule promulgated under the Horse Protection Act was invalid. Beyond the specific rule at issue, the divided decision implicates important questions about the timing and finality of administrative rulemaking. The majority held that a rule is final after it is made available for public inspection in the Office of the Federal Register, even if it has not been published, and therefore at that stage can be withdrawn only by following notice and comment procedures. *See id.* at 575. The dissent maintained, however, that the decision contravened *Kennecott Utah Copper Corp. v. Department of the Interior*, 88 F.3d 1191 (D.C. Cir. 1996) (per curiam), and was directly at odds with the Administrative Procedure Act, the Federal Register Act, and numerous decisions holding that a rule is final upon publication in the Federal Register. *Humane Society*, 41 F.4th at 576–84 (Rao, J., dissenting); *see also id.* at 585 (noting the majority's decision "interferes with the current president's authority to control the regulatory agenda of his

administration" and "has disturbing implications for due process in agency enforcement").

The Association seeks intervention under Federal Rule of Civil Procedure 24(a)(2), which provides for intervention of right to anyone who, "[o]n timely motion," (i) "claims an interest relating to the property or transaction that is the subject of the action," and (ii) "is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest," unless (iii) "existing parties adequately represent that interest." FED. R. CIV. P. 24(a).

Neither the plaintiffs nor the Government contest the Association meets the first two requirements because the rule at issue would effectively ban from competition a substantial percentage of Tennessee walking horses, making it impossible for the Association to stage its show. Now that the Government has declined to seek further merits review of the panel decision, it is equally clear that the Government no longer adequately represents the Association's interests. The only question is whether the Association acted "[o]n timely motion." *Id.*

"Timeliness is an important consideration in deciding whether intervention should be allowed." *Cameron*, 142 S. Ct. at 1012. But "timeliness is to be determined from all the circumstances and the point to which a suit has progressed is not solely dispositive." *Id.* (cleaned up). Applying the standards in *Cameron*, the Association's motion to intervene was timely.

We issued our panel opinion on July 22, 2022, and the Association moved to intervene of right shortly thereafter, on August 5. At the time, the Government had not indicated whether it would seek rehearing en banc. While the Government opposed intervention of right, it indicated it would not object to permissive intervention, particularly if we

deferred consideration of the motion until after the deadline for seeking further review passed, on October 6, 2022. On that date, the Government filed a motion for panel rehearing, but only to amend our opinion "in a limited respect related to the issue of remedy." The Government did not seek rehearing en banc or review of the panel decision on the merits. On that same day, with its motion for intervention pending, the Association lodged its petition for rehearing en banc.

After *Cameron*, it is clear the Association is entitled to intervene. In that case, the Court permitted intervention by the Kentucky Attorney General following a Sixth Circuit decision, because that was the point at which it became clear that the state officials defending the law would not seek rehearing en banc or a writ of certiorari. *Cameron*, 142 S. Ct. at 1008. The Court emphasized that "[t]he attorney general's need to seek intervention did not arise until the secretary ceased defending the state law, and the timeliness of his motion should be assessed in relation to that point in time." *Id.* at 1012. In light of the circumstances, the attorney general's motion to intervene was timely. *See id.* at 1013. The facts here are very similar. The Association moved quickly when it realized the Government might not seek rehearing en banc, filing its motion to intervene within two weeks of our panel opinion and long before the deadline for further review expired. The Association's motion was timely because the "need to seek intervention did not arise until the [Government] ceased defending the [rule]."[1] *Id.* at 1012.

---

[1] Despite the obvious applicability of *Cameron*, the concurring opinion maintains that under circuit law, an entirely different standard applies, and that we may grant a motion to intervene at the appellate stage only in "exceptional cases for imperative reasons." Concurring Op. 2 (quoting *Amalgamated Transit Union Int'l, AFL-CIO v. Donovan*, 771 F.2d 1551, 1552 (D.C. Cir. 1985) (per curiam))

4

The concurring opinion offers two theories to distinguish *Cameron*. First, the concurrence argues *Cameron* rested on "sovereignty concerns" associated with the Kentucky Attorney General's interest in defending the constitutionality of state laws. *See* Concurring Op. 2. That is incorrect. The timeliness analysis in *Cameron* was analytically separate from the part of the opinion discussing Kentucky's sovereign interest. Justice Kagan emphasized this point, noting that "[t]he considerations governing intervention motions—applying equivalently to any person seeking to intervene, including the attorney general— show why the Sixth Circuit went wrong in closing off the suit." *Id.* at 1019 (Kagan, J., concurring in the judgment). Moreover, the Court expressly analogized to a case involving intervention by a private party. *See id.* at 1012 (majority opinion) (citing *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 396 (1977)). Nothing in the Court's opinion limits its timeliness analysis to cases involving public officials or state sovereign interests.

Second, and more puzzling still, the concurring opinion relies on the Government's decision to petition for panel rehearing to amend the majority opinion "in a limited respect,"

_____

(cleaned up). This approach mirrors that taken by the Sixth Circuit in the opinion reversed by the Supreme Court in *Cameron*. Indeed, that panel also repeatedly cited to *Donovan* for the proposition that motions to intervene filed after appellate judgment are disfavored. *See EMW Women's Surgical Ctr., P.S.C. v. Friedlander*, 831 F. App'x 748, 750 (6th Cir. 2020). Yet the Supreme Court flatly concluded that the Sixth Circuit's "assessment of timeliness was mistaken." *Cameron*, 142 S. Ct. at 1012–13. To the extent that *Donovan* is inconsistent with *Cameron*, it is no longer good law. And in any event, *Donovan* is distinguishable from this case because the Government there, after losing on appeal, sought further merits review by filing a motion for panel rehearing and for rehearing en banc, so there was no basis on which to grant the motion to intervene. *See* 771 F.2d at 1552 & n.2.

suggesting this request somehow resolved the Association's grounds for intervention. *See* Concurring Op. 1, 3. This is plainly not true. The Association was first and foremost concerned with securing further merits review of the panel decision, review it was entitled to seek as an intervenor under *Cameron*. The Association's entire petition for rehearing argues for en banc review to resolve the panel majority's inconsistency "with prior decisions of both this Court and other circuits" and the "needless uncertainty" the opinion generates "about the point at which agency actions become final." Only at the end of its petition did the Association briefly argue that we should at a minimum grant the same relief sought by the Government. But the Association nowhere suggested that it would be "satisfied with just that relief." Concurring Op. 1.

Ultimately, the concurring opinion's argument reduces to the proposition that intervention is inappropriate if an existing party has sought any review of the panel decision, no matter how limited. That rule would render *Cameron* a dead letter, allowing existing parties to forestall intervention simply by requesting the panel amend a sentence or two in its opinion.

Finally, I note that denying intervention in this context may result in greater litigation burdens. Prospective intervenors may find it necessary to seek intervention at the outset of an appeal, or perhaps even earlier, to guard against the possibility that the party representing their interests will abandon further review. But at the earlier stage of litigation some parties may be denied intervention because the "existing parties adequately represent [their] interest[s]." FED. R. CIV. P. 24(a)(2). The possibility of this catch-22 will inevitably multiply requests for early and otherwise unnecessary intervention.

\* \* \*

Following the Supreme Court's simple directive in *Cameron*, I would grant the Association's motion to intervene so that it may petition for rehearing en banc on this important issue of administrative law.